LOTTINGER, Judge.
This is a suit for expropriation filed by Gulf States Utilities Company, as petitioner, against Mrs. Alexandrine IT. Moore, Mrs. Sarah Moore LeBlanc, John A. Moore, Jr., and Jane Elizabeth Moore, whose religious name is Sister Mary Regina, as defendants. The defendants own the property sought to be expropriated in this suit in indivisión. The Lower Court rendered a judgment in favor of petitioner and against defendants, granting the servitude sought, and ordering the petitioner to pay defendants the sum of $65,880.00 for the servitude, as well as damages, said sum to bear interest at the *101 rate of 5% per annum from date of judgment until paid.
For the purposes of trial below, this suit was consolidated with two companion suits, namely, Gulf States Utilities company, as petitioner, v. Moore, La.App., 197 So.2d 106 No. 6929 on the docket of this Court, in which the Lower Court awarded judgment in favor of petitioner and against defendant, and awarding defendant the sum of $114,-715.00, with interest, for the servitude and damages, and Gulf States Utilities Company, as petitioner, v. Bingham, La.App., 197 So.2d 106, as defendant, No. 6930 on the docket of this Court, in which the servitude was granted to petitioner and the defendant was awarded the sum of $29,070.00, with interest, for the servitude and damages.
Devolutive appeals have been taken in each of the three suits by Gulf States Utilities Company, and none of the defendants have appealed nor answered same.
The three suits will he considered in this opinion; however, separate judgments will he rendered by this Court in Suits No. 6929 and 6930.
The three pieces of .property which the servitude affects are contiguous and situated in the Parish of East Baton Rouge, Louisiana. The property owned by Alexan-drine H. Moore, and her co-owners, is comprised approximately of two hundred acres, from which 7.8 acres are contained within the servitude. Immediately northwest of this property is the property of John A. Moore, Jr., comprising 298.6 acres, from which 11.13 acres are within the servitude. Immediately to the northwest of the John A. Moore, Jr., tract is the property of Clifton O. Bingham, which is narrow compared to the other two pieces of property, and from which is sought a servitude comprising 2.84 acres of land.
By stipulation of counsel, all parties agreed that the highest and most advantageous use of the property sought to be expropriated was for use as a subdivision containing large residential lots or small acreage tracts, and agreed that the basic land value of all the property is $3,000.00 per acre. The width of the servitude granted was 210 feet, for which servitude the Lower Court awarded judgment at the rate of $3,000.00 per acre, and refused to give any reduction from the stipulated value of said land for mineral rights and any other rights remaining with the property owners. As severance damages, the Lower Court awarded a percentage computed at 80% of the land value for strips of land bordering the property taken for a width of 100 feet on each side of the right of way strip. With regard to the remaining property of the defendants the Lower Court awarded severance damages computed at 5% of the basic land value of $3,000.00 per acre.
In this appeal, the petitioner, Gulf States Utilities Company, alleges error on the part of the Lower Court as follows:
(1) The trial court erred in finding that one hundred per cent (100%) of the value of the area included within the servitude was taken from the landowner by the expropriation.
(2) The trial court erred in finding that a strip of land one hundred feet (100') wide on either side of the said servitude was damaged to the extent of eighty per cent (80%) of its full fee value by virtue of the existence of the servitude.
(3) The trial court erred in finding that all of the remaining land of defendant subject to development, and exclusive of the areas within the servitude, and the two (2) one hundred foot (1000 strips on each side of the servitude were damaged to the extent of five per cent (5%) of its its entire value as a result of the location of the servitude on the defendant’s property.
(4) The trial court erroneously accepted testimony of and decided the case on the basis of defendant’s expert witnesses’ testimony as to percentage diminution in value of the remaining property, although such testimony did not pretend to he based *102 upon anything other than a personal opinion of said witnesses, and without any attempt- whatsoever to show the method of computation thereof, study of comparable circumstances or examination of the other properties similarly situated.
(5) The trial court erred in rejecting the testimony of plaintiff-appellant’s expert witnesses with regard to exhaustive studies made of residential property, developments and sales, and indicating that there is no diminution in value of residential lots as a result of the proximity of electrical transmission lines servitude adjacent to such lots.
(6) The award of expert witness fees to defendant’s witnesses for their preparatory work and for their appearances in court was excessive.
The servitude sought by petitioner is 210 feet wide and is to be used for the erection of metal towers for transmission lines. These metal towers are approximately IOS to 13S feet high and eventually will hold power lines carrying approximately a million volts of electricity. Each tower will have four legs, each resting on a round concrete pier. The bases of the towers will vary from a minimum of 311/4 by 13 feet to a maximum of 36*4 by 14 feet. The power lines will sag between towers to a minimum ground clearance of 35 feet. The towers are to be erected 700 to 900 feet apart. The towers would support two crossarms, the- upper 89 feet long, and the lower 105 feet long.
Two expert appraisers testified on behalf ■of petitioner, and a like number testified on behalf of defendant. In reaching its decision, the Lower Court said:
“As is usually the case in expropriation matters, the experts varied rather widely as to the severance damages or the diminished value of the remaining land after the taking, if any. The Court will discuss the question of severance damages as to each piece of property separately, and will first discuss the John A. Moore, Jr., property.
Mr. Moore owns 494.15 acres, of which according to Mr. Kermit Williams, one of the appraisers, approximately 100 acres is low land and would not be suitable for subdividing. He valued 394.15 acres at $3,000.00 per acre and, as previously stated, -plaintiff is expropriating 11.13 acres of the John A. Moore, Jr., property. This acreage, at $3,000.00 per acre, comes to a total of $33,390.00 as the value of the land taken. The Court is certainly aware that, in a tract of this size, each acre would not be injured in the same degree by the erection of these transmission towers and lines, however, our Courts have said that, in order to ascertain the severance damages, the question to be determined is the diminished value of the remaining land after the taking, compared with the value of the land before the taking. In order to determine this, the Court will try to determine what a developer would pay to an owner for the remaining property, taking into consideration the necessity for building streets across this 210 foot right-of-way, from which he could recover no cost, plus the psychological factor of a fear or reluctance on the part of a home builder to buy near a transmission tower or line. Certainly, there would be some esthetic loss, due to the unsightly tower and transmission line, as well as some fear on the part of some buyers to build in the vicinity of power lines carrying such high voltage. Any subdivider would take these factors into consideration in making an overall offer for the purchase of this property. Mr. Kermit Williams, defendants’ appraiser, was of the opinion that on each side of the servitude a strip approximately 100 feet in width would have to be added to lots adjoining this right-of-way, in order to get a buyer to purchase these lots and permit his home to be built a greater distance from the servitude. He estimated the value of these strips at 20% of the original value. On the John A. Moore, Jr., property, these two strips would take in 10.61 acres, which he *103 valued at $600.00 per acre, or a total of $6,365.00, which represents a loss of $2,-400.00 per acre. He was further of the opinion that for a distance of another 450 feet on each side of the right-of-way, there would be a 10% loss of value of the property within those strips, which would amount to 47.7 acres. He felt that the remaining acreage of high land would lose approximately 5% of its value per acre. He therefore, estimated the damage to the remainder of the John A. Moore, Jr., property at $88,510.00. It will be noted that Mr. J. Russell Doiron, also defendants’ appraiser, estimated the total loss on the John A. Moore, Jr., property at $300.00 per acre, plus an additional loss for trees (which the Court will not allow on the basis that the trees would be part of the value of the property, which was stipulated at $3,000.00 per acre). Mr. Doiron reached a total damage of $132,-038.10.
On the Alexandrine H. Moore, et al, property, Mr. Doiron used his same formula of a 10% severance damage loss per acre and came up with $51,660.00, while Mr. Williams used the same formula he used on the John A. Moore, Jr., property and reached a figure of $47,475.00. Mr. Williams estimated the value of the part taken, 7.8 acres, at $3,000.00 per acre, or $23,400.00 for the value of the land taken. Then, within the two 100 foot strips on either side of the right-of-way, he found the value to be $600.00 per acre for the 7.4 acres, or a loss of $2,400.00 per acre, and by the same formula for the next two 450 foot strips on each side of the right-of-way containing 33.3 acres, Mr. Williams found a loss of 10% of the value. He then estimated the remaining 131.5 acres to have suffered a loss of .05% of value.
On the Bingham property, both Mr. Doiron and Mr. Williams agreed that of the 298.6 acres, some 200 acres are low land, not suitable for subdividing and, therefore, the value is based on the remaining 98.6 acres at $3,000.00 per acre. This defendant is losing 2.84 acres at $3,000.00 per acre within the right-of-way, or a total of $8,520.00. By Mr. Williams’ formula for the two 100 foot strips on each side of these rights-of-way, the defendant will lose 2.75 acres valued at $600.00 per acre, and an additional 12.75 acres within the 450 foot strip on each side of the right-of-way at a 10% loss in value and then a 5% loss of value on the remaining 80.26 acres. He, therefore, estimated the damage to the remainder at $22,465.00. The Court is of the opinion that Mr. Williams is correct in his feeling that the property within the 100 foot strip on each side of this right-of-way will have to be added to lots adjoining this right-of-way, in order to induce a buyer to purchase these lots.
The court is going to grant judgment to Mr. John A. Moore, Jr., in Suit No.1 108,044, for the value of the land taken, namely, 11.13 acres at $3,000.00 per acre, or a total of $33,390.00. Insofar as severance damages, the Court agrees with Mr. Kermit Williams, that a subdivider will lose at least 80% of the value of two 100 foot strips immediately adjacent to the right-of-way. These two strips contain 10.61 acres, which would have a value of $600.00 per acre after the taking. This represents a loss of $25,465.00. The Court is going to allow Mr. Moore a 5% loss of value of the remaining 372.41 acres, or an additional $55,860.00, making a total severance damage of $81,325.00. The Court will allow an appraiser’s fee of $500.00 to Mr. Kermit Williams and $500.00 to Mr.’ J. Russell Doiron, and will fix their fee for testifying in Court at $150.00 each.’'
In Central Louisiana Electric Company v. Williams, La.App., 181 So.2d 844, the Court said that where experts differ as to evaluation of land, the Trial Judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the Appellate Court and, unless manifest error is shown, the decision of *104 the Trial Court should not be disturbed on appeal. In that case the court said:
“Where experts differ as to valuation of land the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the appellate court and, unless manifest error is shown, his decision should not be disturbed on appeal.”
In Central Louisiana Electric Company v. Fontenot, La.App., 159 So.2d 738, the Court said:
“The established rule is that the testimony of each expert should be given effect if that testimony appears to be well grounded from the standpoint of sincerity and good reasoning.
******
“In the instant suit it is apparent that the trial judge considered the testimony of all of the experts. In his excellent reasons for judgment he pointed out that the two appraisers who testified in behalf of defendant were thoroughly familiar with lands in Evangeline Parish, whereas the two appraisers who testified in behalf of plaintiff were not residents of that parish and were not familiar with real estate values in that area. We note that the appraisers called by plaintiff specifically listed other sales of property which they considered to be comparable in which they used in fixing the value of defendant’s land, whereas the experts called by defendant did not specifically list any other comparable sales. But, as pointed out by the trial judge, the comparable sales which plaintiff appraisers used were not rice farming properties and the lands conveyed by those sales differed in other respects from the property involved here.”
In the recent case of State of Louisiana, through the Department of Highways v. Singletary, La.App., 185 So.2d 642, in considering severance damages, this Court said:
“As severance damages, the landowner is entitled to be awarded the difference between the market value of the property immediately prior to and immediately after the taking. This statement is too well established in our jurisprudence to need citation.
Frequently there is less divergence of opinion in determining the value of property prior to expropriation than there is in arriving at the market value of property after taking. No two severances are alike in most cases. Each expropriation must be considered in the light of the circumstances of severance created thereby. Where there is a wide divergence or difference of opinion between the market value of property after the taking of witnesses for the state on the one hand and defendant homeowner on the other hand, and such vast conflict cannot be reconciled otherwise, the court must look to the testimony of these experts to determine which is well grounded in good reasoning.”
Furthermore, in State Department of Highways v. Baddock, La.App., 160 So.2d 279, the Court was required to deal with the valuing of property by experts where there were no comparable sales of property which could be utilized as a rule of measure. This same situation prevails in the instant case. In the Baddock case, the Court said:
“The opinion of each qualified expert in the determination of the market value of expropriated property should be given effect if it appears well grounded from the standpoint of sincerity and good reasoning. But any tendency to average appraisals solely as a matter of convenience and expedience to the court in an expropriation proceeding must be rejected as unwarranted and unjustified. Averaging the estimates of expert witnesses is improper where the testimony of each is not entitled to equal weight.
Now, because of the highest and best use which was stipulated for the property taken, there were no true comparables pre *105 sented to the Lower Court. Mr. Lejeune and Mr. Bahlinger, both of whom testified as appraisers for petitioner, attempted to average appraisals in reaching their values with regard to severance damages. This approach was properly refused by the Lower Court
The courts may rely on the expert opinions of the appraisers when there are no comparables available. In State Department of Highways v. Gielen, La.App., 184 So.2d 737, the Court said:
“However, it has long been the practice of Louisiana courts to rely on the expert opinions of those who deal in land transactions in the vicinity of the expropriated land in the absence of comparable sales in order to establish the value of the remaining lands.”
No one can tell with absolute certainty the extent of the damages to be caused the defendants by the erection of these large towers and electrical lines across the property. In reaching its conclusions, the Lower Court considered the testimony of Mr. Russell Doiron and Mr. Kermit Williams, both of whom testified on behalf of the defendants. Each of these gentlemen had experience in developing subdivisions in the Baton Rouge area.
Mr. Williams was of the opinion that the property should be divided into lots comprising a half acre each. Mr. Bahlinger, on the other hand, considered the lots should have comprised approximately three acres. They each independently utilized their own experience in reaching their conclusions. Mr. Williams gave a lower estimate of damages than Mr. Doiron and the Lower Court held along the lines testified to by Mr. Williams. They agreed that the extra cost of using the remaining land after the taking would outweigh any residuary rights in the land which is subject to the servitude. However, they did agree that such rights should be reserved by the defendants so as to prevent a complete severance of the properties by the servitude.
We do not feel that the Lower Court erred in computing the severance damages on a percentage basis. Such method was used by the Court in Central Louisiana Electric Co. v. Fontenot, and State Department of Highways v. Gielen (supra).
With regard to the taking of the 210 foot servitude, the Lower Court awarded the defendants the full $3,000.00 per acre stipulated by the parties. This was not a case where the defendants would retain some residuary use of the property after ^ the taking. Had the highest and best use of the property been grazing, for example, then the defendants could have continued to use the servitude for said purpose and the price for the taking would have been re-_ duced accordingly. As the highest and best use of the property was that of a subdivision, we find that no advantageous use of the property would remain with defendants. On the contrary, it was shown that defendants would be required to improve streets and run utility lines across the servitude in order to subdivide their remaining property which would actually increase the cost of improving the other property, and for which they would receive no benefit to the property taken. No showing was made that the property taken had any mineral value, so no diminution in price therefor is allowable.
The petitioner contends that the Lower Court erred in allowing fees for Mr. Kermit Williams and Mr. J. Russell Doiron in the sum of $500.00 each for the appraisals, and $150.00 each for testifying in each of the three consolidated cases. We do not believe that these fees were excessive, considering the amount of work involved in making the appraisals of the properties. We, therefore, find no error by the Lower Court on this score.
With the reasons hereinabove assigned, we find no error on the part of the Lower Court, and accordingly, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.