LOTTINGER, Judge.
This is an expropriation suit instituted by Gulf States Utilities Company, as plaintiff, against L. Barbee Ponder, as defendant. The Lower Court rendered judgment in fa *110 vor of the petitioner and against defendant granting petitioner a servitude across the property of defendant, and awarding damages to the defendant in the sum of $7,-137.39. Petitioner perfected a devolutive appeal to this Court, and the defendant filed an answer to the appeal seeking an increase in quantum.
The defendant is the owner of a tract of land situated in the Parish of Livingston, Louisiana, comprising some forty-one acres in area. This tract of land is approximately square in shape and the major portion thereof does not bound on any public highway. There are two strips of land, however, owned by the defendant which connects the property through which the servitude is sought with Public Highway No. 16, commonly referred to as Pete’s Highway. The property of defendant is some two* miles south of Denham Springs, Louisiana, as one would travel along Pete’s Highway.
The servitude sought to be taken by petitioner would comprise a strip of 150 feet in width, entering the property of defendant at its southeast corner and then running in a northerly direction until approximately the center of defendant’s tract of land is reached, then said servitude would make a 90° turn to the left and would run in an easterly and/or westerly direction across the approximate center of the defendant’s property. Said servitude would also include the 50 foot strip of land which connects the major portion of defendant’s property with Pete’s Highway. The acreage sought to be taken by the servitude would comprise 6.689 acres.
The Lower Court awarded a judgment of expropriation in favor of petitioner and against defendant. For the taking of the 6.689 acres, the defendant was granted the sum of $600.00 per acre, or the sum of $4,013.40. For the remainder of the 41.4 acre tract, the defendant was allowed severance damages at the rate of 15% of the value of $600.00 per acre, or the sum of $3,123.99 as severance damages. The Lower Court also allowed defendant legal interest on said sums from date of judicial demand until paid. As stated before, the petitioner has appealed on the question of quantum, and the defendant has answered the appeal.
The facilities to be constructed on the property sought to be expropriated by the petitioner will consist of four tangent structures, each structure would consist of two poles and one angle structure, making a total of twelve poles in each line. Ultimately there would be twenty-four poles on this property. There would be nineteen guy wires and fourteen anchors in the near future. Ultimately there would be thirty-nine guy wires and thirty-four anchors on the property of defendant. These structures would support twelve electrical current carrying conductors and four overhead neutral ground wires. Ultimately there would be a maximum of twenty-four electrical current carrying conductors and four overhead neutral wires.
The servitude, as it would run in an easterly/or westerly direction across defendant’s property, would cut his property approximately in half. After the taking, the only access by defendant to the northern half of this property would be through the servitude.
The petitioner called two expert witnesses in an attempt to establish the highest and best use of the land for which the expropriation was sought, the value of the land to be taken, and severance damages, if any, attributable to the taking. Mr. Leroy Cobb, an appraiser from Baton Rouge, Louisiana, stated that he used the market data approach in reaching his conclusions, and that he valued the land taken at $320.00 per acre. As the taking was that of a right of way and not fee simple title, he took 80% of that valuation and assessed the damages for the taking at the sum of $256.00 per acre. Mr. Cobb testified that, in his opinion, the highest and best use of the property was for farming or for the running of a few cattle on it. *111 He did not consider any subdivision potential, nor did he assess any severance damages to the remainder of defendant’s property.
Mr. John Lejeune, of Baton Rouge, Louisiana, was also introduced as an expert appraiser on behalf of petitioner. He used the same comparables as did Mr. Cobb, however, he disagreed on the valuation of the property. He gave a valuation of $450.00 per acre for the fee simple title to the property, with 80% of that value for the taking of a right of way. He, too, failed to consider any severance damages.
The defendant, on the other hand, introduced three appraisers who testified as experts on his behalf. Mr. Poke Hebert, from Hammond, Louisiana, testified that he made a thorough and detailed consideration of the land with regard to location, elevation, the growth trend of the surrounding areas, etc., in determining the valuation of the properties.
He concluded that the highest and best use of the property in question was that of a subdivision. He took into consideration comparables with the same characteristics as the subject property, including a small entrance setting back from the highway. The appraisal report of Mr. Hebert, which was admitted into evidence by stipulation of counsel, shows that the entire land valuation of defendant’s property prior to the taking was $24,200.00. He assessed the damages for the taking at $12,100.00. This latter figure included the actual taking as well as severance damages to the remainder of the property, thus placing a per acre evaluation on defendant’s property at about $600.00. Mr. Hebert further testified that, after the construction of the power line as proposed by the petitioner, the only manner in which the defendant could get to the northern half of his property would be under the power lines.
Mr. James E. Carpenter, an appraiser of Denham Springs, Louisiana, testified that in his opinion, the property comprised within the right of way had a valuation of $640.00 per acre. He computed 45% of this figure as severance damages to the remainder of the property.
Mrs. Urlo Durbin, the third appraiser for defendant, was the real estate dealer of Denham Springs, Louisiana, who had originally sold the property to defendant for subdivision developments. She appraised the property at the sum of $600.00 per acre, with 50% severance damages on the remainder of the property.
The Lower Court took judicial cognizance of the fact that the highest and best use of the property in question was for subdivision purposes. In so holding, it properly refused to consider the appraisals which were placed on the property by the witnesses for petitioner, both of whom testified that this was farm or pasture land. After considering the comparables and the testimony of the experts, the Court reached the conclusion that the property was reasonably valued at $600.00 per acre. It, therefore, awarded damages for the taking of the 6.689 acre tract at the sum of $4,013.40. For the remaining 34.711 acres, the Lower Court awarded severance damages of 15% of its valuation, or the sum of $3,123.99.
There is no question in our minds that severance damages will be caused to the remainder of defendant’s property. We feel that no error has been shown on the part of the Lower Court in assessing this severance damage at the rate of 15% of the value of the property, nor in fixing the value of the property taken at $600.00 per acre.
The petitioner has alleged error on the part of the Lower Court in allowing damages for the taking at 100% of the value of the area included within the servitude. They claim that the fee simple title will remain in the property owner, and that some reduction should be made because of the fact that he will still retain his mineral interest in the property. With regard to this contention, we refer them to *112 the recent decision in Gulf State Utilities Company v. Moore, et al., 197 So.2d 100, in which we held that the allowance of 100% of value of area included within servitude was not improper where the highest and best use of property taken was that of a subdivision and it was shown that no advantageous uses of the property would remain with the owner after the taking and there was furthermore no evidence to the effect that the property taken had any mineral value. To offset any slight use which the property owner would retain in this 150 foot servitude would be the added expense to which he would be placed in the construction of streets and utilities across this area.
Petitioner further contends that the Lower Court erred in allowing defendant interest at the rate of 5% per annum from judicial demand until paid.
Article 1935 of the Louisiana Civil Code, in defining legal interest, provides:
“The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more.”
Article 1938 of the Louisiana Civil Code further provides:
“All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated.”
The money must be due and be demandable in order to have legal interest charged against or inflicted upon the party owing the money. City of New Orleans v. New Orleans Land Co., 173 La. 71, 136 So. 91. Under the foregoing, we feel that the Lower Court erred in allowing legal interest from judicial demand. It should bear interest from the date of the judgment which is June 29, 1965.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to bear legal interest at the rate of 5% per annum from date of June 29, 1965 until paid, and, as amended, the judgment below will be affirmed, all costs of this appeal shall be paid by petitioner.
Judgment amended and as amended affirmed.