Dear Mayor Mayo,
You have requested an opinion of the Attorney General regarding The Downtown Economic Development District of the City of Monroe ("District") working with a major retail and entertainment developer interested in a particular project ("Project"). The Project, essentially a shopping center, is planned to contain entertainment facilities such as a movie theatre and night clubs, as well as a hotel, a convention center, a 146 slip marina, and a convenience store. The Project, as stated in the facts provided, would also contain museums and historic buildings. In order for the developer to begin construction on this Project, the City of Monroe ("City") would be responsible for purchasing and improving approximately 80 acres of immovable property and would need to expropriate certain parcels of this property if individual landowners refuse to accept any offers made by the City to purchase the property in question.
In considering the feasibility of this project, the City specifically inquires as to whether it can legally use its eminent domain authority in situations where property owners refuse to voluntarily accept the amount offered by the City to purchase the immovable property required for the project. In addressing the issue of constitutional limits on the use of eminent domain authority, recent enactments by the Louisiana Legislature must be considered. These limits were adopted subsequent to the United States Supreme Court's ruling in Kelo v. City of New London, Conn.[1] *Page 2 
 Louisiana's Response to Kelo v. City of New London, Connecticut
The Fifth Amendment to the United States Constitution, made applicable to the states through the 14th Amendment, provides that "private property [shall not] be taken for public use, without just compensation." Article 1, § 4 of the Louisiana Constitution provides similarly that "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." The issue here is that the term "public purpose" was not defined in the United States or Louisiana Constitutions prior to 2005. The United States Supreme Court adopted a broad definition of "public purpose" in 2005, when the Court held, in Kelo v. City ofNew London, Conn., [2] that a Connecticut municipality could use its eminent domain authority to redevelop a residential area in partnership with a private developer. In Kelo, the City of New London expropriated property for a comprehensive waterfront development project following Pfizer's announcement that it was building a facility near New London's Fort Trumbull neighborhood. The development plan was prepared by the New London City Council's consultant, New London Development Corp., and encompassed 90 acres, including 115 privately owned properties and 32 acres already utilized by the government.[3] The development plan included a waterfront conference hotel, restaurants, shopping, marinas, a riverwalk, a museum, office space, retail space, and parking.[4]
The United States Supreme Court's decision in Kelo allowed the Connecticut municipality to use its eminent domain authority, in cooperation with a private developer, to redevelop a non-blighted residential area. This ultimately gave the City of New London the ability to take private property and reallocate it to a non-public entity for the primary purpose of economic development. Even though the Supreme Court has provided that, under theFifth Amendment, eminent domain authority can legally be used by a state or its political subdivisions in a factual situation such asKelo, there is nothing that prevents state or local governments from refraining from exercising this authority through constitutional or other statutory restrictions. In other words,Kelo does not prohibit states from granting further protections to property owners than Kelo requires.
In response to Kelo, the Louisiana Legislature chose to amend its Constitution to narrow the scope of eminent domain authority in the state by providing more rigorous *Page 3 
regulations on takings as well as providing a clear definition for the term "public purpose." In La. Atty. Gen. Op. 07-0147, [5] this Office noted as follows:
 After the Kelo decision, many state legislatures — Louisiana's among them — quickly moved to enact state-level protections against the taking of private property for private purposes. Louisiana's version was enacted as Act 851 of the 2005 Regular Session, which amended La.Const Art I, Sec. 4 and Art. VI, Sec. 21.
In Opinion 07-0147, our office opined as follows:
 [T]the Louisiana Legislature intended to avoid the Kelo problem of an expropriation for the sole purpose of selling the property to a private interest, but that it had the wisdom to provide for a mechanism for the authority to divest itself of that property by sale following the fulfillment of several requirements.[6]
In amending the Constitution, the Legislature also effectively legislatively overruled all prior Louisiana jurisprudence created under the former constitutional provision.[7]
This Office remains of the opinion that the Louisiana Legislature expressly intended to create a constitutional protection for property owners in opposition to the decision handed down by the United States Supreme Court in Kelo v. City of New London,Conn.[8] Therefore, it must be noted that while the facts ofKelo and the current situation are substantially similar, the Louisiana Constitution prevents municipalities from using eminent domain authority to expropriate property for a predominantly private use as was done by the City of New London in the Kelo case. *Page 4 
 Constitutional Limits
La.Const. Art. I § 4 (B)(1) states that "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." Subsection (B)(2) sets forth various limitations as to what constitutes a "public purpose" within the meaning of (B)(1). Considering the facts provided in your opinion request, from a non-economic development point of view, it is probable that the Project mentioned above would partially satisfy the definition of "public purpose" provided in La.Const. Art. I § 4 (B)(2)(b)(iv) which includes "[p]arks, convention centers, museums, historical buildings and recreational facilities generally open to the public."
While the law cited above would likely cover a portion of the intended use of the property at issue, La.Const. Art. I § (B)(3) expressly states that:
 [n]either economic development, enhancement of tax revenue, or any incidental benefit to the public shall be considered in determining whether the taking or damaging of property is for a public purpose pursuant to Subparagraph (1) of this Paragraph or Article VI, Section 23 of this Constitution. (emphasis added)
Therefore, based upon the facts provided, even though a portion of the Project would include museums and historic buildings, it appears that the main purpose of this development would be the economic development obtained through the entertainment facilities and other various amenities. Thus, it is probable that the anticipated expropriation would be proscribed under Louisiana law.
La.Const. Art. I § 4 (B)(1) further provides that:
 [p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution, property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.
Based upon the facts that you have presented, the Project would inevitably require the City of Monroe to expropriate property for the predominant use by a private developer or to the transfer of ownership of some private property to a private developer at some *Page 5 
point in the future.[9] Therefore, not only would the Project be unconstitutional for using eminent domain authority for the primary purpose of economic development, but also because the property would need to be taken by the City for the predominant use by a developer, a private entity.[10]
 Economic Development: An Invalid Public Purpose inLouisiana
As stated above, La.Const. Art. I § 4(A)(1) expressly states that:
 [n]either economic development, enhancement of tax revenue, or any incidental benefit to the public shall be considered in determining whether the taking or damaging of property is for a public purpose.
In addition to stating that economic development shall not be considered in determining whether or not a public purpose exists, the constitution also limits the definition of the term "public purpose."[11]
La.Const. Art. I § 4(B)(2) states as follows:
 "public purpose" shall be limited to the following:
 (a) A general public right to a definite use of the property.
 (b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:
 (i) Public buildings in which publicly funded services are administered, rendered, or provided.
 (ii) Roads, bridges, waterways, access to public waters and lands, and other public transportation, access, and navigational systems available to the general public.
 (iii) Drainage, flood control, levees, coastal and navigational protection and reclamation for the benefit of the public generally.
 (iv) Parks, convention centers, museums, historical buildings and recreational facilities generally open to the public.
 (v) Public utilities for the benefit of the public generally.
 (vi) Public ports and public airports to facilitate the transport of goods or persons in domestic or international commerce. *Page 6 
 (c) The removal of a threat to public health or safety caused by the existing use or disuse of the property.
This Office is of the opinion that the purpose of the Project, described in the facts above, is essentially one of economic development. However, this Office also recognizes that a proper and binding determination of a "public purpose" may only be made by a court of competent jurisdiction. Such a determination, by necessity, is based on findings of fact. This Office cannot make factual inquiries or findings of fact.[12] A declaratory judgment, by a court of law, would be the most efficient method of achieving such a determination. In support of this contention, the court in Town ofVidalia v. Unopened Succession of Ruffin[13] held that:
 [w]here the state or its political subdivisions seek to acquire property by the exercise of the expropriation power, the primary question is whether the taking is for a public purpose. This determination is made by the court on the particular facts presented.
Therefore, if the City of Monroe would like a lawful determination as to whether the Project satisfies the definition of a "public purpose," this Office recommends filing a declaratory judgment action in a court of competent jurisdiction.
While the facts that you have provided state that museums, historic buildings, and a convention center are all part of the Project, the burden of proving a "public purpose" for the entire development would be incumbent on the City of Monroe. Not only would the City of Monroe bear the burden of proving this "public purpose" in court, but it would also be unable to bear the burden by citing economic development benefits, which are banned from consideration by La.Const. Art, I § 4(A)(1). Therefore all benefits obtained from the entertainment and shopping facilities, including the movie theatre and night clubs, the hotel, the marina, and the convenience store must be ignored. This would mean the City would need to prove that the Project's primary public purpose is to build the convention center, museums, and historic buildings as noted in the facts provided, or to satisfy any other legitimate public purpose allowed under La.Const. Art. I § 4(B)(2)
 Conclusion
While a municipal corporation, such as the City of Monroe, may expropriate when "such a course is determined to be necessary for the public interest by the governing authority *Page 7 
of the municipality,"[14] and "[w]here a price cannot be agreed upon with the owner,"[15] the municipality may only use this authority in the manner allowed by Louisiana law. La.Const. Art. I § 4(A)(1) expressly states that economic development shall not be considered in deciding whether a taking or damaging of property is done for a public purpose. La.Const. Art. I § 4 (B)(1) further states that "property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity."
Since the use of eminent domain authority, being considered by the Downtown Economic Development District of the City of Monroe for the Project, appears not to comply with the provisions of La.Const. Art. I § 4, it is the opinion of this Office that the City may not expropriate the parcels of property owned by individuals who refuse to accept offers to purchase their property. However, should the City of Monroe seek a legally binding determination of whether the Project satisfies the definition of a "public purpose," this Office recommends filing a declaratory judgment action in a court of competent jurisdiction.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ DANIEL D. HENRY JR. Assistant Attorney General
 JDC/DDH/jv
[1] 545 U.S. 469 (2005).
[2] Id.
[3] Id. at 473.
[4] Id.
[5] It should be noted that La. Atty. Gen. Op. 07-0147 dealt with the issue of expropriation of blighted property, which unlike the current factual situation, falls under the removal of a threat to public health or safety caused by the existing use or disuse of the property as provided for in La.Const. Art. I § 4(B)(2)(c).
[6] The mechanism for the sale of property to a private interest mentioned in La. Atty. Gen. Op. 07-0147 refers to La.Const. Art. I § 4(H) which states that the sale of expropriated property that has not been held for more than thirty years must be first offered back to the original owner before it can be sold to another private person or entity. While this is the general rule, property expropriated for "port facilities, highways, qualified transportation facilities or airports" are not bound by this procedure. La.Const. Art. I § 4(H)(1).
[7] See City of Shreveport v. Chanse GasCorp., 33,959 (La. App. 2 Cir. 8/22/01), 794 So.2d 962; Town ofVidalia v. Unopened Succession of Ruffin
95-580 (La. App. 3 Cir. 10/4/95), 663 So.2d 315; and Board ofCom'rs v. Missouri Pacific R. Co.,625 So.2d 1070 (La.App. 4 Cir. 1993), writs denied
93-3100, 93-3088 (La.1/28/94), 630 So.2d 802, cert. denied512 U.S. 1220 (1994).
[8] Kelo, supra.
[9] This assertion is based on the suggestion in your request that the City of Monroe would be unable to amicably purchase all of the immovable property necessary to complete the Project and would need to use its eminent domain authority to obtain the remaining parcels.
[10] La.Const. Art. I § 4(B)(1)
[11] La.Const. Art. I § 4(B)(2).
[12] See Atty. Gen. Op. No. 07-0111.
[13] 95-580 (La. App. 3 Cir. 10/4/95), 663 So.2d 315; citing,City of New Orleans v. New Orleans Land Co.,136 So. 91 (1931).
[14] La.R.S. 19:102.
[15] Id.