FRUGÉ, Judge.
This is an expropriation suit instituted by Gulf States Utilities against Joseph E. Robin et al., the owners of a tract of land in St. Landry Parish, seeking a servitude for an electric power line. The only issue before the trial court was the compensation owed to the defendants. The trial court granted the defendants a total of $3,104.64 for land actually taken, and $3,405.96 in severance damages to remaining land on the tract. The plaintiff appealed the trial court’s judgment only in regard to its award for severance damages. The defendants did not answer the appeal.
The servitude acquired by the plaintiff was 170 feet wide, on which an electric transmission line approximately 75 feet high was already contructed at the time of the trial. The servitude runs through the 200-acre Robin tract, 10.78 acres of which was taken by the plaintiff for the servitude. The remaining 189.22 acres lie on either side of the electric transmission lines.
The trial court valued the 189.22 acres contiguous to the servitude at $68,119.20 and allowed 5% of this value for severance damages. The plaintiff does not contest the valuation of the property, but it does contend that there was no basis for the trial court’s holding that the property’s value was reduced by 5% by virtue of being contiguous to the electric transmission line servitude.
All of the realtors testifying at the trial agreed that the highest and best use of the property would be for agricultural purposes. The defendants contend that the presence of the electric line will hamper farming operations on the contiguous land, in that aerial crop-dusting, seeding and fertilizing will be made more difficult and less effective. Edward Thistlethwaite, an aerial crop-duster testifying for the defendants, said that crops close to electric lines which were seeded, sprayed and fertilized by aerial means were noticeably inferior to crops away from the electric lines. He ascribed this to the maneuvering necessary to avoid the electric lines and the frequent inability to fly at the optimum height in the area of the lines.
Mr. John W. Wilson, a realtor called by the defendants, testified that in addition to the reduction in value caused by the crop-dusting problem, the mere presence of the high “towers” supporting the electric lines would reduce the severed land’s marketability. He estimated the total reduction in value of the severed land to be 5% of its value before the taking.
Mr. Dalton G. Godeaux, an aerial crop-duster testifying on behalf of the plaintiff, was of the opinion that the effect of the electric line on aerial dusting would be limited to that area immediately under the line. He also testified that no extra charge was made for a field with a line running through it.
Mr. Dan A. Ritchey, a realtor testifying for the plaintiff, was of the opinion that there would be no diminution in value of the land remaining outside the servitude as a result of the construction of the electric line. He also stated that if two tracts of land were identical in every respect except that one of the tracts had an electric line bordering it, the one without the line would be easier to sell and that he as a buyer would prefer the one without the line. Mr. Allen J. Angers, also an expert testifying on behalf of the plaintiff, gave testimony essentially the same as that of Mr. Ritchey.
The plaintiff contends that the defendants failed to prove that there was any severance damages caused by the taking, because two out of three expert witnesses were of the opinion that there were none. The trial court, however, has the discretion to evaluate contradictory testi *424 mony and is not bound to accept one version over the other merely because the number of witnesses is greater on one side. This is especially true in the instant case where both of the plaintiff’s witnesses said that they would prefer property without an electric line and that property without the line would be easier to sell. This in itself would be an adequate basis for awarding some severance damages.
The plaintiff also contends that the trial court was manifestly erroneous in awarding 5% severance damages on all of the property, pointing out that the aerial crop-dusting problem only existed, if at all, in an area close to the lines and therefore should not extend to the unaffected acreage. It is true that only those crops in the area close to the line would be directly affected by the electric lines. However, it was not erroneous for the trial court to average the effect on the entire tract. Also included in the 5'% figure is the deleterious effect of the electric lines on the general marketability of the property other than that caused by the crop-dusting problem.
In Central Louisiana Electric Company v. Fontenot, 159 So.2d 738 (La.App.3d Cir. 1964), a case almost directly in point, involving a 1,000-acre tract with a servitude for an electric line being taken, the court awarded 10% of the value of the land outside the servitude as severance damages. At pages 741 and 742 of that case, the court made the following remarks:
“Plaintiff contends that the evidence fails to establish that the remainder of defendant’s property will be damaged as a result of the taking, and accordingly that the trial judge erred in allowing defendant severance damages.
“The real estate appraisers called by defendant testified that the construction of an electric power transmission line across defendant’s property will damage the remainder of the 1,000-acre tract which is suitable for rice farming. They explain that such a line, with poles extending 55 feet above the ground, will prevent satisfactory aerial spraying, planting and fertilizing of crops on this tract, and for that reason the construction of such a line will render the remainder of the property less desirable for rice farming purposes.
“Several neighboring landowners confirmed the testimony of these experts to the effect that the construction of a transmission line over the right of way taken here would materially reduce the market value of the remainder of defendant’s farm land. Also, the manager and part-owner of an agricultural flying service testified that it would be difficult, if not impossible, to properly spray, plant or fertilize defendant’s farm land aerially after the construction of the transmission line, and that his firm does not guarantee ‘anything’ where aerial spraying, planting or fertilizing operations are conducted near such a transmission line.
“The appraisers called by plaintiff were of the opinion that the construction of such a line across this property would not cause defendant’s remaining farm land to be damaged at all. Although they concede that the existence of a transmission line on rice farming lands would prevent planes from flying as low as necessary to conduct satisfactory aerial agricultural operations, they testified that there are trees located on the property involved here which would prevent satisfactory aerial services even though a transmission line were not constructed.
“The trial judge determined that the market value of defendant’s 1,000-acre tract of farm land would be decreased 10 percent as a result of the taking. We think the evidence supports that conclusion, and accordingly we hold, as did the trial judge, that defendant is entitled to severance damages amounting to 10 percent of the value of the remainder of his farm land.”
*425 We feel that the trial court in the instant case, as in the Fontenot case, was justified in making a blanket percentage award for severance damages to the remaining property. See Louisiana Power & Light Company v. Dixon, 201 So.2d 346 (La.App.2d Cir. 1967).
The plaintiff also contends that there is no showing that all of the remaining property will actually be used for farming. However, we should assume that it will be since all of the experts agreed that farming would be the highest and best use of the property.
For the foregoing reasons, the trial court’s award to the defendants of $3,405.-96 in severance damages, being 5% of the value of the remaining land evaluated at $68,119.20, is affirmed, at plaintiff-appellant’s cost.
Affirmed.