TUCKER, Judge.
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plaintiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana, area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below:
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.5 feet from the top of the pole. There is a six foot space beneath it, between it, and the next cross-arm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being sixty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eighths of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top cross-arm, and two conductors on the bottom crossarm. The wires that carry the “hot electricity,” the phase conductors, are 336-400 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the code calls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts, for the surface rights expropriated and for severance damage caused to’ the remainder. Ten of *330 these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
In the instant suit judgment was given in favor of Dixie Electric awarding a servitude across defendant’s property more properly described as follows :
Commencing at the Northwest corner of Lot l-A-6 being on the East right-of-way line of La. Highway 1036; thence South 01° 23' East along the East right-of-way line of La. Highway 1036 for 87.04 feet to the Point of Beginning; thence South 69° 33' East for 1,360.96 feet; thence South 79° 07' East for 1,019.05 feet to the West bank of Tick-faw River; thence South 10° 51' 35" West along the West bank of Tickfaw River for 39.82 feet; thence South 86° 25' 29" West for 241.03 feet; thence North 79° 07' West for 794.04 feet; thence North 69° 33' West for 1,329.24 feet to the East right-of-way line of La. Highway 1036; thence North 01° 23' West along the East right-of-way line of La. Highway 1036 for 107.72 feet back to the Point of Beginning, containing 5.-276 acres of land, all as more particularly reflected on plat of property on which servitude area is denoted, which plat is attached hereto and incorporated herein, marked for identification as “Judgment Exhibit 1”.
The trial court awarded judgment in favor of defendants, Louis M. Landry and Landry and Passman Realty, Inc., in the amount of $3,975.00 as just compensation for the property expropriated, and an additional sum of $1,000.00 for severance damages, plus expert witness fees to be taxed as costs with plaintiff to pay all costs of the proceedings.
Plaintiff Dixie Electric has appealed from the judgment of the trial court, alleging error by the court in making an award based upon an evaluation of the property expropriated at $750.00 per acre, in awarding full fee value of this amount, and in awarding severance damages. Defendants answered the appeal, asking for an increase in judgment. In their answer to plaintiff’s amended petition, defendants had itemized the following as just compensation :
(a) Land Included within the 100 feet wide perpetual servitude $ 5,300.00
(b) Severance or consequential damages to remaining land 11,068.00
(c) Value of the Improvements In the area Included In the servitude taken 7,700.00
(d) Crop damages 1,610.00
$25,678.00
The property involved in this litigation is an 88.4 acre tract of land located in Livingston Parish north of the Interstate Highway and U. S. Highway 190 near the town of Holden. It is rectangular in shape except for its frontage of about 2500 feet upon the meandering Tickfaw River. The property also fronts 2100 feet on paved State Highway #1036.
For some time previous to suit there had been a limited development of the property along the river for camp sites. Mr. Carpenter acknowledged that the plat of a proposed subdivision of a considerable portion of the property for camp sites was recorded in 1964 or 1965, but he stated there were no sales of individual lots since the recordation of the plat and only one sale of a group of the said lots. He did not consider the un-subdivided part (Tract 1-A-l) as having a subdivision potential, and did not think the power line servitude would cause severance damages to the remainder by preventing or restricting its use as a camp site subdivision.
The record shows that the defendant Landry had constructed an all weather gravel road through the property, giving access to each lot shown on the map thereof. At the time of the trial Mr. Landry was extending the gravel road an additional 1500 feet. He had installed a water system, had constructed two ponds upon the property, and had erected a barn upon Lot *331 l-A-l. He also had planted numerous dwarf holly trees on Lot l-A-l for commercial purposes. Between 50% and 65% of the property had been cleared before suit was filed.
Exhibit Landry #4 shows that Dixie Electric’s servitude crosses the defendants’ property diagonally beginning at the western line of Lot l-A-6, along the blacktop road, traverses the center of Lot l-A-5, the rear of l-A-4, the middle of the un-subdivided Lot l-A-l, crosses the entire front portion of Lot 1-E-l, and encompasses almost all of Lot 1-F of the subdivision. The pond, water-line, and barn and about 80 holly bushes are included in the right-of-way. Plaintiff Dixie Electric filed a stipulation in the proceedings offering to bury defendants’ water line to a deeper depth, if necessary, promising not to interfere with their use and enjoyment of the improvements located within the servitude, not to interfere with or damage the dwarf holly trees, and offering to pay for any physical damages which plaintiff should cause. Defendants rejected this stipulation and refused to sign it.
Dixie Electric’s appraiser, James C. Carpenter, found the highest and best use of the property to be for pasturage, although he acknowledged the presence of the camps and the improvements. He listed three sale comparables, none of which had water frontage, although these tracts adjoined or were within one-half mile of the subject piece. They ranged in price from $350.00 to $500.00 per acre. Mr. Carpenter adjusted the price of defendants’ property and arrived at the figure of $567.00 per acre for the five acres taken, or $3,005.10. He allowed 80% of this figure, since he claimed that the property was actually improved for pasturage and the surface rights not interfered with. He estimated the value of the total taking at $2,404.00.
We remain unconvinced by the defendant’s expert witness, Earl R. Graham, who was employed by the defendant just before the trial began and gave the defendant’s property only a cursory examination. His testimony is not grounded in reason, and is entitled to little, if any, probative weight. Our inability to rely upon the evaluations, findings and conclusions of Mr. Graham has been thoroughly expressed by us in several of the consolidated cases this day decided, and particularly: Dixie Electric Membership Corporation v. Kinchen, La.App., 280 So.2d 332; Dixie Electric Membership Corporation v. Kinchen, et al., La.App., 280 So.2d 342; Dixie Electric Membership Corporation v. Whitehead, La.App., 280 So.2d 315. The significance and reliability of Mr. Graham as an expert witness was lessened further by his testimony in the Shell Sibley case this day decided, La.App., 280 So.2d 346, in which he stated flatly, when asked if he were competent to appraise property, “No, I am not,” and was permitted to testify as an expert over the objection of counsel. As we have stated in the consolidated cases, the sales listed and relied upon as comparables by Mr. Graham simply do not possess the same nature and characteristics as does the subject property.
While Mr. Carpenter appraised the Landry property as best suited for pasturage, and, although the record indicates that some of the property is best suited for camp sites, we opine that there is no substantial evidence which negates the Carpenter evaluation in fixing the per acre value of the property taken at $567.00. He supports this estimate with sales of properties which, although not having river frontage, lie within relative proximity to the subject tract, and possess some of the same characteristics. There is no substantial evidence in the record which depicts the value that the subject tract might have as a camp site subdivision, and in the absence of such evidence there is no legal justification for making an award on the basis of this classification.
Arithmetical calculation, as well as the supplemental per curiam filed by the trial court, indicates that the trial judge fixed the sum of $750.00 per acre as the basis of his award for the property taken. This per acre value is not supported by the *332 record, and we believe that resort must be had to Mr. Carpenter’s evaluation figure of $567.00 per acre in order to determine the value of land taken for the servitude.
In our opinion Mr. Carpenter’s estimate of value is predicated on reasonable grounds, and we opine that his figure of $3,005.10 for the total value of the 5.3 acres included in the servitude is correct. We also feel that this is not a total taking, since there are many of the surface rights to the property which remain with the landowner, and will not be disturbed by the advent of the power line. Eighty (80%) per cent of the fee value properly represents the compensation due defendant landowner for the taking of the servitude.
Likewise we are convinced and so hold that the taking here does not involve or include any improvements or crops within the right-of-way. The stipulation signed by Dixie Electric to which we alluded above provides an additional guarantee and protection to the landowner Landry against any damages caused him by the activities or depredations of the plaintiff within the servitude area.
There is no legal basis for the award of severance damages in the sum of $1,000.00 to the Landry remainder. There is no proof of the value before the taking and the value after the taking, nor is there any substantive evidence establishing what, if any, reduction in value to the remainder was caused by the taking.
We allude to our relatively detailed discussion of the problems entailed and the methods used in fixing expert witness fees, which is contained in the opinion of the consolidated case, Dixie Electric Membership Corporation v. McDowell, La.App., 280 So.2d 306 handed down this day.
In the instant case the services of Earl R. Graham as an expert real estate appraiser were engaged by the defendant immediately before or during the course of the trial. It appears that Mr. Graham’s examination and preparatory appraisal work were somewhat meager in scope and extent. His statement for services gives no itemization of the hours spent and his output of effort in reaching his conclusions. It is clear that he did not check the records in the courthouse to find his com-parables. Under the circumstances here we believe that Mr. Graham is entitled to a fee of $100.00 for his appraisal work, and a fee $50.00 for his appearance in court as an expert witness.
For the reasons assigned the judgment of the trial court awarding the defendant compensation for the true value of the land taken for the servitude will be amended by reducing this sum from $3,975.00 to the sum of $2,404.00; the award of the trial court of severance damages in the sum of $1,000.00 is reversed; the expert witness fee of Earl R. Graham is reduced to the sum of $150.00 and same is taxed as costs; in all other respects the judgment is affirmed.
The defendant shall pay the costs of this appeal; all other costs are to be paid by the plaintiff.
Affirmed, as amended, in part; reversed in part; and rendered.