313 So.2d 366 (1975)
SOUTHWEST LOUISIANA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff and Appellant,
v.
Maxie DUHON and Clifton Broussard, Defendants and Appellees.
No. 4969.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1975.
Rehearing Denied June 18, 1975.
Writ Refused September 17, 1975.
*367 Davidson, Meaux, Onebane & Donohoe, by Edward C. Abell, Jr., Lafayette, for plaintiff-appellant.
Guy O. Mitchell, Ville Platte, Gerald C. DeLaunay of Logan & Martin, Lafayette, Gerald I. Hebert, Lafayette, for defendants-appellees.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
Plaintiff filed this suit to expropriate a 100-foot servitude for an electric transmission line along the west boundary of the property of the defendant, Maxie Duhon. Upon learning of a slight deviation in the boundary line between the Duhon property and the property owned by Clifford Broussard on the west, plaintiff amended its petition to include Broussard as defendant.
The trial judge awarded Duhon $8,780 for property actually taken, and $9,525 as severance damages to his remaining property, including $3,000 for damages to a frame house located near the power line. The award to Broussard was $108 for property actually taken and $6,525 as severance damages.
Plaintiff appeals the award of severance damages to both defendants. Defendant, Maxie Duhon, answered the appeal, seeking an increase in the amount awarded for the property actually taken. Defendant Broussard did not appeal nor answer the appeal.
*368 Defendants own adjoining tracts of land, each rectangular in size and fronting on a blacktop road. Maxie Duhon's property contains some 21.97 acres with a 759-foot frontage on the road to a depth of 1,264 feet. Clifford Broussard's property consists of 23 acres, having a 792-foot frontage also to a depth of 1,264 feet. The properties are about six miles from the City of Lafayette. All appraisers agree their best use is for residential subdivisions.
The servitude is 100 feet in width by 1,264 feet in length. It runs along the boundary line between the properties of the two defendants, the greater portion being taken from the Duhon property. The part taken from the Duhon property contains 2.89 acres. A small sliver of land, about 10 feet wide comprising .045 acres, was taken from Broussard.
SLEMCO proposes to erect a "69 K-V" electric transmission line supported by H-frames constructed of dual wooden poles 60 to 65 feet in height with 32-foot crossbars and braces. The lines will hang about 30 to 35 feet from the ground. At any future time, under the provisions of the expropriation agreement, plaintiff is empowered to substitute and add additional structures, including guywires, where necessary.
The plaintiff's experts were Mr. Gene N. Cope and Mr. Dan A. Ritchey, Jr. They valued the frontage of the property on a front-foot basis to a depth of 300 feet. The market value of the property was determined by using comparable sales in the neighborhood of the subject property.
Mr. Cope valued the 2.89 acres taken from Mr. Duhon as follows:
(1) Frontage100 feet at $35 per foot  $3,500. He determined that Mr. Duhon would have no remaining surface rights on the property taken to a depth of 300 feet, or approximately 0.69 acres. Thus, he testified that 100% of the fee value of the property had been taken by the servitude. Consequently, he assigned a value of $3,500 for this portion of the property expropriated.
(2) Rear acreage2.20 acres at $3,000 per acre$6,600.
He found that Mr. Duhon would retain 20% of the surface rights on this portion of the property. Therefore, he concluded that 80% of the fee value of this portion of the Duhon property had been taken by the servitude. Thus, he valued the rear portion taken at $5,280. The total value of the 2.89 acres taken amounted to $8,780. Mr. Ritchey concurred in the above valuations reached by Mr. Cope.
The Duhon experts valued the land on an acreage basis only. Mr. Kermit A. Williams valued the land at $4,500 per acre. Curtis C. Book valued it at $5,000 per acre.
Defendant Duhon contends that the award for the property taken is inadequate. His counsel argues that the plaintiff's experts erroneously used larger tracts of agricultural size as comparables. It is urged that the small tracts used by defendant's experts were the proper comparable sales to be used in determining the market value of the property taken. Defendant Duhon also disagrees with the SLEMCO experts as to the percentage of the fee value of the property taken.
The comparables used by plaintiff's experts were more recent than those used by defendants' experts. The tracts used were quite similar in size, shape and highest and best use. One of the tracts used was located within a mile of the subject property. It contained 20.79 acres, was rectangular in shape, had road frontage on two sides, and had dimensions of 704 feet by 1286 feet. Its highest and best use was potential subdivision development. It sold on May 15, 1973, a few months before the October, 1973 taking. The selling price per acre was $2,886.
Where there were many surface rights which would remain with the landowner *369 and which would not be disturbed as a result of expropriation of an electric transmission servitude, 80% of the fee value properly represented the compensation due the landowner for the taking of the servitude, Dixie Electric Membership Corporation v. Landry, 280 So.2d 328 (La.App.1st Cir. 1973), writ denied, 282 So.2d 145 (La. 1973).
In the present case the SLEMCO experts assigned 100% of the fee value for the 100-foot frontage on the road to a depth of 300 feet. They gave 80% of the fee value to the rear portion of the servitude expropriated. Mr. Cope testified that the landowner retained the following surface rights on this latter portion: (1) pasture; (2) lawn; (3) garden; (4) recreation; and (5) limited access.
In expropriation cases, much discretion is granted the trial judge in weighing the testimony of experts. His finding of value, based on such evidence, will not be disturbed unless clearly erroneous, State v. Hickman, 277 So.2d 525 (La.App.3rd Cir. 1973); Central Louisiana Electric Company v. Davis, 291 So.2d 487 (La. App.1974). Hence, we affirm the amount awarded by the district court for the value of the Duhon property taken.
There is no issue on appeal as to the value of the Broussard property taken because he neither answered the plaintiff's appeal, nor filed a separate appeal. Even so, the same method of valuation was used by the plaintiff's experts on the Broussard property as had been done for the Duhon property. Therefore, we affirm the $108 awarded for the value of the Broussard property taken.
Next, we must decide the issue of severance damages. Plaintiff's experts testified there was no diminition in market value of the Duhon property as a result of the servitude. Mr. Cope testified his investigation of other subdivisions in the Lafayette area revealed no diminished market value to the property adjacent to such servitudes. He offered photographs of these subdivisions to support his conclusions. He adopts the theory that the deterrent, if any, of the sale of the adjoining property diminished as the subdivision development progressed. However, he admitted that it would be easier to sell the land without a servitude along its boundaries and that it would take more time to sell property encumbered by a servitude.
Mr. Ritchey testified that a prospective purchaser would buy property as though the servitude did not exist. However, he admitted that his testimony would be the same now as it was in Gulf States Utilities Company v. Robin, 237 So.2d 422 (La.App. 3rd Cir. 1970), where he said that if two tracts of land were identical in every respect, except that one of the tracts had an electric line bordering it, the one without the line would be easier to sell.
Mr. Williams testified people generally do not like to buy homes near large high voltage electric lines because they possess an inherent fear of living next to them. Mr. Book testified that the people he knows in the real estate business prefer not to buy property encumbered by such servitudes.
This court has recently recognized that aesthetic considerations, unsightliness of the power lines, an inherent fear of living next to the power lines (all of which have adverse psychological effects on any purchaser or user of the property next to the power lines), in conjunction with other proven factors, can support an award of severance damages if these factors serve to reduce the market value of the remainder of the property, Southwest Louisiana Electric Membership Corporation v. Beck, 299 So.2d 411 (3rd Cir. 1974) and the authorities cited therein. We conclude the evidence clearly supports an award of severance damages in the present case.
Mr. Williams and Mr. Book employed the strip method of determining severance damages recognized by this *370 court in the Beck case. Mr. Williams testified that the 100-foot strip on the Duhon property adjacent to the servitude would be reduced in value by 50%. According to him the total value of this strip containing roughly 2.9 acres is $13,050, reduced by 50% equals severance damages in the amount of $6,525. Mr. Williams also found severance damages to the small frame house on the Duhon property located within 30 to 40 feet of the western boundary of the servitude. He gave the house a $12,000 value and attributed 25% of its value to severance damages, or a sum of $3,000. Thus, his total figure for severance damages was $9,525.
Mr. Book concluded that the first 50 feet away from the servitude boundary would be reduced in value 70% and the next 50 feet, 30%. His figure for severance damages to the Duhon property totaled $7,225. He agreed with Mr. Williams as to the severance damages to the frame house on the Duhon property.
We find no error in the trial judge's award of $9,525 in severance damages to Duhon.
As to the Broussard property, plaintiff contends that only its experts appraised the property. They found no severance damages. Although Mr. Book and Mr. Williams did not physically examine and appraise the Broussard property, they both testified that the resulting diminution in value caused by the servitude affects the property on either side of a power line equally.
On direct examination, Preston J. Babineaux testified that a power line along a boundary between two properties has equal effect on the diminution in value of the land adjacent to the servitude if the two tracts are substantially the same in physical characteristics. Even Mr. Cope, one of plaintiff's experts, testified that he used the same comparables for the Duhon and Broussard properties because they were adjacent tracts and had the same utilization in area and terrain. Therefore, we conclude the trial judge correctly used the same basis to award severance damages to the Broussard property as he did for the Duhon property.
The trial court awarded defendant Duhon legal interest from date of judicial demand. Plaintiff contends that interest should accrue from October 23, 1973, the date of the Duhon taking. The defendant Duhon contends that interest accrues from June 2, 1972, the date of the judicial demand. Alternatively, he argues that interest should run from June 6, 1972, the date that SLEMCO filed notice of lis pendens urging that such filing is an actual taking of the property by removing it from the stream of commerce. The courts have rejected defendants' argument that a filing of the notice of lis pendens is a taking from which time interest accrues, City of New Orleans v. New Orleans Company, 173 La. 71, 136 So. 91 (1931); State v. Miller, 250 La. 668, 198 So.2d 397 (1967). This court has held in cases expropriating servitudes that interest begins from the date of the taking, when such taking occurred subsequent to judicial demand, Florida Gas Transmission Company v. Hanks Company, 247 So.2d 179 (La.App.3rd Cir. 1971). See also A. K. Roy, Inc. v. Board of Commissioners for Ponchartrain Levee District, 238 La. 926, 117 So.2d 60 (1960). Hence, we conclude that interest is due from the date of the taking.
Finally, defendant Duhon argues that the fees of his expert appraisers should be awarded as costs according to the fee each appraiser actually charged. Kermit A. Williams billed defendant $850 for his appraisal and $200 for a one day court appearance. Curtis C. Book also charged $850 for an appraisal, but only $150 for his court appearance. The trial court awarded each appraiser the actual fee charged for his appraisal. Each of them was only awarded $50 for his court appearance. The assessment as costs for the court appearance of expert witnesses *371 lies largely within the sound discretion of the trial court, State v. Hoyt, 272 So.2d 768 (La.App.3rd Cir. 1972). We find no error in that portion of the trial court award.
For the reasons assigned, the judgment is amended to provide that the award to Duhon bears legal interest from the date of the taking of the servitude on his land, October 23, 1973, rather than the date of judicial demand. Otherwise, the judgment is affirmed.
Affirmed as amended.