DOMENGEAUX, Judge.
Just compensation for the taking of a servitude is the only issue to be resolved by the Court in this expropriation proceeding. The parties stipulated at the commencement of trial that the purpose of the taking is public and necessary and that the plaintiff has the legal right to expropriate. Louisiana Constitution of 1974, Article 1, Section 4; La.R.S. 19:2.
Plaintiff, Valley Electric Membership Corp. (VEMCO), seeks to expropriate a servitude over a tract of land owned by defendants Teddie R. Dowden and his wife, Donna Chance Dowden. The Dowden tract contains 22.7 acres of land, has about 1253 feet of frontage on Louisiana Highway 8 (the main traffic artery between Leesville and Alexandria), and has situated upon it the Dowden residence and several outbuildings. The land is traversed by Mosquito Creek, which only recently has been rechan-neled and dredged, and the land has been largely cleared and the surface partially leveled.
VEMCO intends to construct a 69 KV power transmission line across the Dowden property. For this purpose it needs a servitude 100 feet in width for a distance of 1191 feet, together with a 5-foot by 10-foot extension for a guy wire. The taking encompasses an area of 2.76 acres.
In addition to lay witnesses and a survey- or, three appraisers testified at the trial. Mr. Charlie McCain and Mr. M. C. Gehr testified on VEMCO’s behalf. They appraised the value of the 2.76 acre servitude at $15,000.00 and $13,800.00 respectively. Neither believed that the remaining property would be damaged by the servitude. Consequently, neither included an amount for severance damages.
Mr. Normand Terry appraised the property and testified on behalf of the Dowdens. Mr. Terry valued the 2.76 acre servitude at $29,500.00. He also felt that the remaining land did suffer some damage as a result of the servitude and estimated the amount of these damages at no less than $7,700.00.
The trial court relied upon the appraisal of Mr. Terry and awarded the Dowdens $37,200.00 ($29,500.00 as the value of the servitude and $7,700.00 in severance damages). Taxed as costs of the proceedings was the surveyor’s (Mr. Charles C. Wise’s) expert fee of $100.00 and Mr. Terry’s fee, which was fixed at $750.00. Costs of the proceedings were borne by VEMCO.
VEMCO has appealed and argues that the trial court committed manifest error (1) by awarding $29,500.00 for the 2.76 acre expropriation, and (2) in making an award for severance damages. VEMCO argues that the value of the taken land is considerably less than Mr. Terry’s appraisal because the land is low-lying, is flood prone, and must be built up considerably before a subdivision may be constructed, and because *1092 the area represented by the creek is inherently worth less than the rest of the land. Unlike plaintiffs expert appraisals, Mr. Terry’s appraisal did not include deductions for these alleged drawbacks.
VEMCO’s other contention is that the remainder of the Dowden property is not damaged by the taking since the servitude roughly follows the creek bed and does not affect property outside of the creek. We reject VEMCO’s argument and affirm the trial court’s judgment.
In a well-reasoned opinion, Judge Roy B. Tuck, Jr. summarized the testimony and the reports of each of the three appraisers and then explained why he relied upon Mr. Terry’s appraisal. We find that his opinion ably and correctly disposes of VEMCO’s arguments and we therefore quote the pertinent parts of that opinion, as follows:
“. . . Mr. McCain testified that, in his opinion, the property of Mr. Dowden fronting the highway to a depth of two hundred fifty feet (250) from the highway had a highest and best use as commercial property and that the remainder of the Dowden tract had a highest and best use for potential residential development . . .
Based upon his comparables [omitted here], as adjusted by him, Mr. McCain concludes that that portion of the subject property which is best suited for commercial usage would have a value of Twenty Thousand Dollars ($20,000.00) per acre and that the portion of the subject property best suited for residential development would have a value of Twelve Thousand Dollars ($12,000.00) per acre, both classifications of use being subject to deduction for additional fill considered by Mr. McCain to be necessary.
In computing the value of the taking Mr. McCain considered the residential property and the commercial property separately and, although he admitted that such practice is not customary appraisal procedure, Mr. McCain made certain computations excluding or reducing the value of that portion of the property lying within Mosquito Creek. He considered that the portion of commercial property taken consisted of 0.58 acres of which 0.19 acres lay in the creek leaving a remainder of 0.39 acres. Using a price of Twenty Thousand Dollars ($20,-000.00) per acre Mr. McCain concluded, after deducting an estimated cost for filling of Two Thousand Five Hundred Seventeen Dollars ($2,517.00) and a Fifteen per cent (15%) residual value of Seven Hundred Ninety-Two Dollars ($792.00) and adding back a Fifty per cent (50%) value of the servitude for the creekbed that the compensation due for the taking of that portion best suited to commercial use was the sum of Five Thousand Five Hundred Eighty-Five Dollars ($5,585.00).
For the remaining portion best suited to residential development Mr. McCain considered that there was a total of 2.18 acres of which 0.36 acres lay in the creek leaving a remainder of 1.82 acres. Using a land value of Twelve Thousand Dollars ($12,-000.00) per acre and deducting fill cost estimated by him in the amount of Eleven Thousand Seven Hundred Forty-Six Dollars ($11,746.00) and a Fifteen per cent (15%) residual value in the amount of One Thousand Five Hundred Fourteen Dollars ($1,514.00) and adding back Fifty per cent (50%) of the easement value for that portion lying in the creek, Mr. McCain estimated the value of that portion to be the sum of Nine Thousand Four Hundred Twenty-Nine Dollars ($9,429.00). He then added the two figures arriving at the sum of Fifteen Thousand Fourteen Dollars ($15,-014.00) rounded to the total of Fifteen Thousand Dollars ($15,000.00) as just compensation due.
Mr. McCain did not consider that there was any damage to the remaining property and, consequently, allowed no severance damage.
Also testifying for the plaintiff as an expert appraiser was Mr. M. C. Gehr of Alexandria, Louisiana. Mr. Gehr considered that all of the property subject of this action had a highest and best use as property for potential residential development .
*1093 Mr. Gehr computes the value of the servitude as a whole. He is of the opinion that the land taken in servitude will have a residual value of Two Thousand Eight Hundred Dollars ($2,800,00). Based upon a land value of Six Thousand Dollars ($6,000.00) per acre and a quantity taken of 2.76 acres, he concludes that the total value of the 2.76 acres is Sixteen Thousand Six Hundred Dollars ($16,600.00) from which he deducts the sum of Two Thousand Eight Hundred Dollars ($2,800.00) [residual value of the servitude to the Dowdens] leaving a value of Thirteen Thousand Eight Hundred Dollars ($13,800.00) for the taking.
Mr. Gehr was of the opinion that the remaining land would not be damaged as a result of the taking and, consequently, allowed no severance damages.
Called by the defendant to testify as an appraiser was Mr. Norman D. Terry [sic] of DeRidder, Louisiana. Mr. Terry was of the opinion that that portion of the subject property fronting the highway to a depth of approximately two hundred and nine feet (209) had a highest and best use as commercial property and that the remainder of the subject property had a highest and best use for residential development .
Mr. Terry considered that the subject property contained six (6) acres of commercial property which he valued at Twenty Thousand Dollars ($20,000.00) per acre and 16.7 acres of property best suited for residential development which he valued at Eleven Thousand Dollars ($11,000.00) per acre for a total valuation of the subject property, less any structural improvements, of Three Hundred Three Thousand Seven Hundred Dollars ($303,700.00). Dividing the total valuation by the total acreage he concluded that the property, considered as a whole, had a per acre value of Thirteen Thousand Three Hundred Seventy-Eight Dollars and Eighty-Five Cents ($13,378.85) which he rounded to Thirteen Thousand Three Hundred Seventy-Nine Dollars ($13,-379.00) per acre. This appraiser figured that the total value of the 2.76 acres taken in servitude was Thirty-Six Thousand Nine Hundred Twenty-Six Dollars ($36,926.00) and that the owner would retain a twenty per cent (20%) residual value giving an indicated value of the servitude of Twenty-Nine Thousand Five Hundred Dollars ($29,-500.00).
Mr. Terry further concluded that the approximately seven (7) acres of potential residential property lying west of Mosquito Creek and south of the portion best suited to commercial use would be damaged by the imposition of the power line to the extent of ten per cent (10%) of it’s total present value. He based this judgment upon the fact that any proposed subdivision would have to be redesigned to accommodate the right of way and that it would be necessary to totally redesign streets. He felt that there would be some loss of lots because of the configuration of the remainder and the location of the power line thereon. Accordingly, it was his opinion that severance damages in the amount of Seven Thousand Seven Hundred Dollars ($7,700.00) being ten (10) per cent of the total value of seven (7) acres at Eleven Thousand Dollars ($11,-000.00) per acre would be necessary in order to compensate the landowner. Adding the value of the portion taken in servitude and the severance damages, Mr. Terry concluded that the total estimated just compensation was the sum of Thirty Seven Thousand Two Hundred Dollars ($37,200.00).
From the evidence it appears that the area in which the subject property is located has experienced considerable recent growth, that the subject property is adjacent to a major highway, adjacent to newer, better developed subdivisions and is convenient to hospitals, schools and churches. It also appears from the evidence that this area is beginning to experience considerable commercial development. For these reasons the Court finds it necessary to accept the opinion of Mr. McCain and Mr. Terry that the portion of the subject property fronting on the highway is best suited for commercial usage and that the remainder of the subject property is best suited for residential development and to reject the opinion of Mr. Gehr that the subject property has a highest and best use as residential and no commercial potential at this time.
*1094 It is remarkable to note that Mr. McCain arrives at a value of the commercial property ready to develop of Twenty Thousand Dollars ($20,000.00) per acre and a value of the residential portion of the subject property ready to develop of Twelve Thousand Dollars ($12,000.00) per acre. Mr. Terry calculates the value of the commercial property at Twenty Thousand Dollars ($20,-000.00) per acre and the value of the residential portion of the property at Eleven Thousand Dollars ($11,00.00) per acre. Mr. McCain then, of course, proceeds to deduct for additional fill and for the portion lying within the creek as the same was rechan-neled. There is considerable believable testimony to the effect that the existence of the creek does not greatly impair the utility of the property to be used for commercial purposes including the illustrations by Mr. Terry in his appraisal report (Exhibit D-6) reciting that Berry Town Shopping Center, Leesville, Louisiana, is built over a large drainage structure and small creek and that the same is the case of East Village Shopping Center, DeRidder, Louisiana and the structure housing Morris Tire Center in DeRidder, Louisiana. Considering this evidence and the admission by Mr. McCain that deducting for the area contained in a creek is not customary appraisal practice, it is the opinion of the Court that Mr. McCain, in his computations, should not have made this deduction and that the entire 2.76 acres included within the taking should be compensated at the full per acre value of the property less the residual value retained by the landowner. [Emphasis added].
The Court is also convinced by the testimony of Mr. Terry and the plaintiff [sic] Mr. Dowden (a builder and developer by occupation) that homes are customarily constructed on residential lots upon a pad of earth, the cost of which is passed on in the price of the house and is not attributable to the land upon which the same is constructed. Likewise the Court holds that the evidence, including the testimony of Mr. Charles C. Wise who ran a series of elevations upon the property and has observed it over an extended period of time, the testimony of Mr. James Armes who has observed the property over an extended period of time and the testimony of Mr. Dow-den himself that, since the deepening of the creek and the partial leveling of the subject property, there has been no flooding, it is improper to deduct from the value found any rough estimate of cost of fill which may not be necessary or required. It is the further opinion of the Court that the purpose of an appraisal by an expert is to determine the present value of the property being considered as of the date of the proposed expropriation.
The Court, having seen and heard the witnesses and having reviewed the reports prepared by the appraisers testifying herein, concludes that, taking into account size, location, configuration and proximity to the same facilities, the transactions referred to by Mr. Terry are more nearly comparable to the subject property than are the compara-bles used by Mr. McCain and Mr. Gehr. For example, the property subject of the sale by Mr. Clark to Vernon Beverage Company is different in nature. The Clark property is more rural in nature, is further remqved from the city, is lacking in certain utilities, contemplates gravel streets and contains no commercial area. By the same token, comparables (4) and (5) utilized by Mr. Gehr in his appraisal appear to be of very little assistance. The two sales considered there were obviously sales of improved rural residential property not necessarily adapted to either commercial use or to residential development in the sense of being readily susceptible of subdivision.
Consequently, the Court is of the opinion that the sum of Twenty Nine Thousand Five Hundred Dollars ($29,500.00), as determined by Mr. Terry, is an appropriate figure which would adequately and justly compensate the landowner for the property taken herein.
As pointed out in Louisiana Power and Light Company v. Churchill Farms, Inc., (La.1974) 292 So.2d 183, there is no magic formula for the determination of severance damages. In the instant matter, neither Mr. Gehr nor Mr. McCain feel that any damage will result to the remainder. As *1095 pointed out hereinabove, Mr. Terry felt that approximately seven (7) acres of residential property lying west of Mosquito Creek would be damaged to the extent of ten per cent (10%) of it’s total value. The Court accepts Mr. Terry’s judgment in this matter and feels that his judgment is adequately corroborated by his testimony, by the testimony of Mr. Wise and by the testimony of Mr. Dowden. Reference to exhibit D-3 indicates that the center line of the servitude and presumably the electric wires and supporting structures would pass directly over at least eight (8) of the possible lots to be derived from subdividing that property. There can be no question but that unsightliness and possible fear of the power line would make these lots less desirable to a purchaser with an alternative. Southwest Louisiana Electric Membership Corporation v. Duhon, (La.App. 3rd Cir. 1975) 313 So.2d 366; Rehearing denied June 18, 1975; Writ refused September 17, 1975. The evidence further demonstrates that primary access to this tract of potential residential property is from the stub of Kimberly Drive as the same now exists. To subdivide the property differently would likely necessitate a different access and potential loss of certain of the properties available without the existence of the power line. Accordingly, the Court is of the opinion that the evidence adequately demonstrates that the noncommercial portion of the subject property lying west of Mosquito Creek will be damaged by the taking and construction of the power line and that the estimate of ten (10%) per cent vouched by Mr. Terry is not an unreasonable estimate of that damage.”
For the reasons expressed by the trial judge, whose opinion has been substantially reproduced above and is adopted by this Court, we affirm the award to the Dowdens of $37,200.00 as just compensation for the servitude taken over their land. The judgment is also affirmed in all other respects. Costs of this appeal are assessed against VEMCO.

AFFIRMED.