663 So.2d 315 (1995)
TOWN OF VIDALIA, Plaintiff-Appellee,
v.
The UNOPENED SUCCESSION OF Sherman RUFFIN, et al., Defendants-Appellants.
No. 95-580.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*316 Jack Hendrix McLemore Jr. and Linda Lee Kincaid, Vidalia, for Town of Vidalia.
Robert Elisha Clark, Vidalia, for The Unopened Succession of Sherman Ruffin et al.
Before KNOLL, THIBODEAUX and DECUIR, JJ.
KNOLL, Judge.
This is an expropriation suit instituted by the Town of Vidalia (the Town) against the owners of two tracts of immovable property situated in Concordia Parish. Defendants are the unopened successions of nine deceased members of the Ruffin family. From a judgment granting the expropriation and ordering the Town to pay compensation in the amount of $2,050.00, the defendants appeal. We affirm.

FACTS AND PROCEDURAL HISTORY
In 1994, the Town's Board of Aldermen authorized acquisition of approximately fifty-eight acres of batture land located between the levee and the Mississippi River at Vidalia, Louisiana (hereafter referred to as "the site"). The site, part of the Old Town of Vidalia, was acquired by the Fifth Louisiana Levee District in 1939 for flood control purposes, and since 1946 has been occupied by the U.S. Corps of Engineers as a mat casting field.[1] With the consent of the Corps, the Town sought to develop the site "for the public use and enjoyment for recreation and tourism purposes, to preserve the area as a significant historical site of the original Town of Vidalia, and to promote economic growth through tourism."
Defendants' two tracts of land constitute approximately ¼ acre within the fifty-eight acre site. The Unopened Successions of Sherman Ruffin, James Ruffin, Millie Ruffin, Charlie Ruffin, Henry Ruffin, and Ida Ruffin Washington are each the owners of an undivided 1/7 interest in the two tracts, and the Unopened Successions of Rose Johnson Butler, Lettie Johnson Simmons, and Ida Johnson are each the owners of an undivided 1/21 interest in the two tracts. The Town negotiated unsuccessfully with the defendants for the acquisition of their interest in the property and subsequently filed an expropriation suit. Defendants alleged in their answer that the expropriation was not for a public purpose and that defendants were not offered a fair price for their property. After a hearing, the trial court granted the expropriation and adjudicated defendants' property to the Town for $2,050.00, the fair market value estimated by the Town's appraiser.
Defendants' appeal of the adverse judgment raises only the issue of whether the expropriation is for a public purpose; the award is not contested.

THE VIDALIA RIVERFRONT DEVELOPMENT PROJECT
Sidney Murray, Chairman of the Vidalia Riverfront Development Project (the Project), testified at trial regarding the history and purpose of the Project. He explained that the Project originated in 1970 when the Corps of Engineers allowed the Town to host its week-long centennial celebration on the site. On other occasions over the years, the Corps allowed the Town to host several public ceremonies there. Mr. Murray testified that on each occasion, the townspeople commented how nice it would be "to obtain this site of the old town back and develop it into a recreational area for public enjoyment. By the people in Vidalia. As well as maybe able to attract some tourism in here by having access to view the Mississippi River here."
*317 Mr. Murray stated that the Town created the Riverfront Development Committee and selected Grover Mouton, an urban designer in New Orleans, to plan the Project. Mr. Mouton was assisted by faculty, graduates, and students of the Tulane University School of Architecture. The Town solicited ideas for the Project during a series of three public workshops; these ideas were discussed with the planning team, and a preliminary master plan was formulated, consisting of the following:
(2) Hotel/Commercial/Retail Center
According to the original design recommendations, this area will be developed as a hotel that would include commercial and retail space. The hotel will initially contain 100 rooms with attendant, but limited capacity for medium-sized meetings as well as in-house dining, pool/ health club facilities. A firm decision should be reached relative to the importance of accommodating larger scaled conventions which might visit the area....
The general configuration of the entire core complex follows the basic outline of the original town plan (and the original line of the river) and will be developed to maximize views through the structure toward Natchez. The hotel, sited within fifty feet of the riverbank, will offer dramatic views of the Mississippi River, the bluffs of Natchez across the river and the twin spans of the bridge from balconies on the riverward side. The interior court between hotel and commercial/retail spaces is to be landscaped and will provide dual access to the hotel rooms and the commercial area on the landward side of the complex. This court is conceived as a continuation of the larger public landscape connected to the Riverwalk and recreational fields outside the core.
The hotel occupies the upper two levels of this three story building, while the lower level is raised on pilings (much like the old buildings of Vidalia which existed outside the old levee). This raised platform of the hotel provides a direct view on grade through from the interior courtyard to the river and beyond. One possibility of use for this lower level would be for meeting rooms, restaurants and marina offices. Occupation of this area depends in large measure on whether or not the area is above insurance flood level....
(3) Marina/Boat Ramp
This element of the proposal has been investigated in close relation to both the hotel and the Riverwalk. It should be large enough to accommodate a small number of medium sized pleasure craft.... Two factors of the design and placement of this facility were particularly significant in the decision-making process. First, we are aware of the value of the historical relationship between the old town of Vidalia and the river. Consequently, we positioned the marina in such a way as to enhance the visual massing of the core area as it moves upward from the river. Second, the design team feels strongly that the proposed location of the marina must be such that the concentration of people and economic interests in the core will serve to enhance the long-term viability of the marina....
Direct access to the river via a new boat ramp is provided by utilizing an access drive and ramp on the riverside of the hotel. This location allows site and river access for pleasure boating without compromising the integrity of the public open spaces to the south of the primary core, while simultaneously localizing boat and river traffic.
(4) Outdoor Theatre
This outdoor (and uncovered) theatre will provide ample seating for a variety of both large and small performances, from local plays or performances to larger performances by nationally recognized talents. The strategy allows for maximum flexibility in use, while utilizing the new landscape structure to provide an appropriate location for the stage. A simple stage and backstage structure (including dressing rooms and storage areas) is sited to face the commercial walkway and a permanent seating *318 area. This seating area conceals the parking structure below and provides fixed seating over an earthen base. Stage lighting equipment is also included in the design, and would utilize areas around the stage as well as appropriately positioned lighting locations from the `balcony' of the walkway and landscape adjacent to the commercial/retail complex. This proposal locates the theatre close to the hotel to allow for direct access and view from the upper levels of the hotel, as well as from the roof terrace above the hotel lobby. The location of the theatre is such that there is no impediment to relatively clear views of Natchez, the Mississippi River, the twin bridges and the annual Balloon Race....
(5) Riverwalk
The Riverwalk has been conceived as a multipurpose project which will provide both visual and physical access to the River. As the primary circulation path along the edge of the site and of the River, a variety of architectural and landscape elements should make this attractive as well as useful in tying the whole of the site together. Conceivably, the Riverwalk could function not only as a pleasant recreational path or viewing platform, but also as an educational tool. The careful placement of signage and/or pavilion structures could provide a history of the long-standing relationship between the towns of Vidalia and Natchez and the surrounding region in relation to the river. While the focus would be on some historical interpretation of the old town of Vidalia, the potential of this project to describe the history of exploration, settlement, commerce and change could provide an educational and enriching experience for visitors to the area....
(6) Visitors' Center and Ferry Terminal As in the old town of Vidalia, there is a direct connection along the line of Concordia Avenue from levee to river. Along that line, next to the on-site parking area will be the Visitors' Center. There are clearly ample opportunities for an educational agenda for the site which can provide possibilities for local, state or government funding. One such program would be a Louisiana State Welcome Center on-site. A second might be a museum focusing on regional history. Given the proposal for an educational use for the Riverwalk, either program would be more than adequate to meet the needs of on-site educational programming. The possibility of integrating these two programs might also be considered. Such a strategy could give the Town of Vidalia a wider range of potential financial support. A facility of this kind would then be used as a dual-purpose museum and welcome center in conjunction with some sort of walking tour of the site, allowing maximum integration of the site with the programmed facility.
Such a program, beyond housing conventional visitor's center information and facilities, might also house a gift/bookstore, a small auditorium for video lectures about the area and its history, as well as some gallery areas displaying historically relevant materials, from steamboat or commercial use of the river to historical/archaeological material from the old town and surrounding areas.
At the end of the line of old Concordia Avenue which crosses the site, we have proposed a reintroduction of ferry service to connect Vidalia's new riverfront development to the Under the Hill area of Natchez. The terminal for this service would be developed along the Riverwalk and would provide a secondary focus beyond the core, drawing visitors, on the one hand, to the area along the Riverwalk or, on the other, providing easy access to the core....
(7) Landscape/Recreational Use
From the line of the parking area inside the public commons we have developed a simple structure to accommodate the various needs of the large-scale recreational uses of the site. The center of the whole of the site has been dedicated as public open space, which has the capacity to accommodate a variety of playing field types. Along the edge of the parking area and the playing fields a line of small buildings and bleachers have been proposed which could accommodate *319 the needs of the general public. These buildings include the proposed Visitors' Center, restrooms and concession stands, picnic pavilions and bar-b-que pits, landscape maintenance buildings and other general service buildings....

PUBLIC PURPOSE
Eminent domain is the inherent right of a sovereign to acquire private property for public purposes without the consent of the owner, provided just compensation is paid. The process by which this power is exercised in Louisiana is expropriation. See La. Const. art. 1, § 4.
Where the state or its political subdivisions seek to acquire property by the exercise of the expropriation power, the primary question is whether the taking is for a public purpose. This determination is made by the court on the particular facts presented. City of New Orleans v. New Orleans Land Co., 173 La. 71, 136 So. 91 (1931).
Defendants in the case sub judice contend that in order to show a public purpose, there must be "a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable to some portion of the public." River & Rail Terminals, Inc. v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337 (1930).[2] Despite this restrictive language, the Louisiana jurisprudence has not defined "public purpose" so narrowly. See Texas Pipe Line Co. v. Stein, 190 So.2d 244 (La. App. 4 Cir.1966), reversed on other grounds, 250 La. 1104, 202 So.2d 266 (1967) ("`actual public use' is not the criteria by which public purpose is determined"). Rather, any allocation to a use resulting in advantages to the public at large will suffice to constitute a public purpose. Moreover, a use of the property by a private individual or corporation, when such use is merely incidental to the public use of the property by the state or its political subdivisions, does not destroy an otherwise valid public purpose. In considering this issue, the Louisiana Supreme Court has noted that:
"`public use' is synonymous with `public benefit,' `public utility' or `public advantage,' and ... authorize[s] the exercise of the power of eminent domain to promote such public benefit, etc., especially where the interests involved are of considerable magnitude, and it is sought to use the power in order that the natural resources and advantages of a locality may receive the fullest development in view of the general welfare."
City of New Orleans v. New Orleans Land Co., 136 So. at 92.
Considered in light of the foregoing, it is apparent that the Town seeks to expropriate defendants' property for a permissible public purpose, namely the Riverfront Development Project. In his capacity as Chairman of the Project, Sidney Murray testified at length regarding the historical, educational, recreational and other public uses to which the site would be dedicated. It was shown that the Project will stimulate economic growth in Concordia Parish, an area which has struggled with a poor economy and high unemployment. It is uncontradicted that the Project will contribute to the general welfare and prosperity of the community of Vidalia. Therefore, we conclude that the trial court properly granted the expropriation and adjudicated the defendants' property to the Town of Vidalia.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED.
NOTES
[1] The site is subject to a servitude in favor of the United States through the Corps of Engineers. With the exception of a 150' area along the riverside toe of the levee, the Corps has agreed to renounce its servitude to allow the Town to proceed with the Riverfront Development Project.
[2] In River & Rail Terminals, plaintiff contended that a spur track laid by defendant was constructed for the private accommodation of defendant and the New Orleans Refining Company, and to make the private business of both more profitable. In holding that no public purpose was established, the court noted that "[t]he spur track of defendant company crosses the land of plaintiff company in order to reach the loading station of the New Orleans Refining Company, a private enterprise whose premises the public has no right to enter, but is prohibited from so doing." 130 So. at 339 (emphasis added). It is clear that the court reached the correct conclusion under the particular facts before it.