**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-30783

CITY OF SHREVEPORT,

Plaintiff-Appellee,

versus

SHREVE TOWN CORPORATION,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

December 26, 2002

Before DeMOSS, STEWART and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Shreve Town Corporation ("Shreve Town") appeals from the district court's entry of a final judgment under FEDERAL RULE OF CIVIL PROCEDURE 54(b) in favor of the plaintiff, City of Shreveport ("City"). The judgment allowed the City to expropriate Shreve Town's property upon payment of $1,444,665. For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves the expropriation of Shreve Town's property by the City to house a parking garage in connection with the Shreveport Convention Center Project ("Project"). The Project consists of three components: (1) a convention center, (2) a hotel, and (3) the disputed parking garage. The parking garage will be utilized by convention center attendees and hotel patrons.

In January 1998, the City commissioned Ernst & Young, a large international accounting and management firm, to assess the market potential and development issues for the convention center. In July 1998, Ernst & Young concluded that the City is capable of supporting a convention center and proposed a number of site options for it. Ernst & Young also advised that adequate parking facilities would need to be built in order for the convention center to be successful.

In September 1998, then Mayor Robert Williams met with the Convention Center Planning Committee ("Williams Committee") to discuss the development of the convention center in light of Ernst & Young's conclusions. In November 1998, around the time that Mayor Williams left office and Mayor Keith Hightower began his administration, the Williams Committee issued a report preliminarily addressing the preferred site for the convention center, development of the convention center hotel, funding for the construction and maintenance of the Project, and presentation of the Project to the City's voters. The Williams Committee further recommended that the City construct a well-designed and well-positioned parking garage. Mayor Hightower appointed a new Convention Center Planning Committee, which also advocated the construction of a parking garage.

In April 1999, the Shreveport City Council adopted Resolution Number 78, which called for an election to authorize the issuance of 85 million dollars in general obligation bonds to construct the Project. In July 1999, the bond issue was presented to the voters and passed overwhelmingly. To assist in implementing the Project, the City hired Slack, Alost, Miremont & Associates, Inc. ("SAM"), which assembled a team of architects, real estate developers and hotel consultants to

develop the convention center. SAM and various consultants concluded that the only site in downtown Shreveport which could accommodate the convention center was located at the corner of Caddo and Market Streets. Based on this location and the recommendations of the traffic and parking experts, the City, through Mayor Hightower, determined that Shreve Town's property was the best site to house the proposed parking garage. The parking garage will be located adjacent to the convention center and hotel, connected to each through an elevated walkway, and will house 1200 to 1500 vehicles.

In September 1999, Robert L. Russell, M.A.I., an appraiser hired by the City, placed the value of Shreve Town's land at $870,000. The City unsuccessfully attempted to negotiate with Jolene C. Harms, Shreve Town's Chief Executive Officer, to purchase the property. As a result, in February 2000, the City Council adopted Resolution Number 38, authorizing the City to institute expropriation proceedings against Shreve Town's property. Resolution 38 states, in part, that "public necessity dictates that [Shreve Town's] property be owned and subject to the use by the City []" and "that all attempts to amicably acquire fee tittle to the property had failed."

In January 2000, the City filed an expropriation suit against Shreve Town in state court. In February 2000, Shreve Town removed the case to federal court on diversity grounds. In November 2000, a three-day bench trial was held on the issue of the City's right to expropriate Shreve Town's property. Agreeing with the City, the district court entered an order sustaining the City's right to expropriate Shreve Town's property. In December 2000, a three-day jury trial was held to determine the fair market value of Shreve Town's property. The jury returned a verdict finding that Shreve Town's property had a fair market value of $1,444,665. Shreve Town immediately filed a Motion to

Complete Compensation for the recovery of its attorneys' fees, expert witness fees, and other litigation expenses. The motion remains pending in the district court.[1]

The district court entered judgment allowing the City to expropriate Shreve Town's property upon payment of $1,444,665. The judgment further stipulated that the costs, including expert witness and attorneys' fees, incurred by Shreve Town in defending the suit are to be reserved for determination by the district court. In January 2001, Shreve Town filed a Motion for a New Trial and a Motion to Alter or Amend Judgment, in which it challenged the validity of the district court's Rule 54(b) certification and the judgment's finality. In May 2001, Shreve Town filed a Motion for Redetermination of Just Compensation. The district court denied these motions.

On June 29, 2001, Shreve Town appealed the judgment of expropriation. On October 9, 2001, Shreve Town filed a motion with this Court to dismiss its appeal for lack of jurisdiction if the Court concludes that the judgment appealed from is not "final." Shreve Town also moved for the Court to expedite consideration of its motion and to stay briefing pending a decision. In November 2001, this Court ordered that Shreve Town's motion to dismiss its appeal be carried with the case and denied Shreve Town's other motions. We affirm the judgment of the district court allowing the City to expropriate Shreve Town's property and deny Shreve Town's motion to dismiss.

DISCUSSION

Shreve Town requests that its appeal be dismissed for lack of jurisdiction if this Court concludes that the judgment was not final because its attorneys' fees, expert witness fees, and other

---

[1]By order dated January 31, 2001, the district court referred Shreve Town's motion to Magistrate Judge Roy Payne for recommended findings and conclusions. On June 14, 2001, Magistrate Payne submitted his report and recommendations. After Shreve Town filed exceptions and objections to the recommendations, the district court remanded the motion to Magistrate Payne for further consideration. The motion remains pending before the magistrate judge.

litigation expenses (collectively, "costs") were not included in the judgment. Shreve Town also contends that the City does not have the power to expropriate its property. Shreve Town further contends that economic development is a not a valid public purpose. Lastly, Shreve Town asserts that the district court erred in excluding evidence relating to the development of the hotel. We will address these arguments in turn.

I.      Jurisdiction

Shreve Town requests that its appeal be dismissed if we find that the judgment appealed from is not final. We review a Rule 54(b) certification *de novo*. Tubos de Acero de Mexico, S.A. v. Am. Intern. Inv. Corp., 292 F.3d 471, 485 (5th Cir. 2002).

Shreve Town contends that the judgment of expropriation is not final because its costs were not included in the judgment. Shreve Town asserts that art. I, § 4 of the Louisiana Constitution requires that these costs be encompassed in a "just compensation" award prior to the City's expropriation of its property. Art. I, § 4 provides in part, that "property shall not be taken or damaged by the state or its political subdivisions except for public purpose and with just compensation paid to the owner or into court for his benefit. . . .In every expropriation, a party has a right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss." In Consolidated Sewerge Dist. of City of Kenner v. Schulin, 387 So. 2d 1369, 1372-73 (La. Ct. App. 1988), the court held that the phrase "to the full extent of his loss" was meant to include an award of attorney's fees to the landowner.

The Judgment of Expropriation in the current case provides "[t]hat all claims of Defendant for costs, including expert witness fees, expenses and attorney's fees incurred by Defendant in defending this suit, be and they are hereby expressly reserved to Defendant, for Court review and determination." While it is true that ordinarily attorney fees and litigation costs are subsumed in a

"just compensation" award under the Louisiana Constitution, the exclusion of Shreve Town's costs from the judgment was not fatal to its appealability. A review of the record reveals that the City and Shreve Town agreed to resolve the costs issue through motions at a later date due to Shreve Town's counsel being located in California and other issues surrounding Shreve Town's discharged counsel's fees. The record does not indicate any objection by Shreve Town to the contrary. Moreover, Shreve Town did not rebut the City's representation at oral argument that the parties consented to resolve the attorney's fees issue at a later date.

Regardless of whether the Louisiana Constitution includes attorney's fees as part of just compensation, however, the United States Supreme Court has held that demands for payment of attorney's fees by the opposing party are never considered part of the merits for Rule 54(b) purposes.[2] Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201-02 (1988). Accordingly, Shreve Town's argument that we lack jurisdiction under Rule 54(b) because the judgment is not final lacks merit.

II.     Power of Expropriation

Shreve Town contends that the City does not have the power to expropriate its property. Specifically, Shreve Town argues that the City's power of expropriation is subject to the limitations of art. I, § 4 and art. VI, § 21 of the Louisiana Constitution. Shreve Town further argues that the City does not have the power to expropriate for economic development under the general laws enacted by the Louisiana Legislature and the City Charter. Lastly, Shreve Town asserts that section 19:102 of the Louisiana Revised Statutes is procedural in nature and does not confer a substantive

---

[2] Shreve Town's contention that Deus v. Allstate Insurance Co., 15 F.3d 506 (5th Cir. 1994) controls here is unavailing. There we held that where an attorney sues his own client for fees, such a suit is on the merits, and does not fall within Budinich. In this case, the attorney's fees sought are from the opposing party, rather than the attorney's own clients, making Dues inapposite.

power of expropriation. We review questions of statutory interpretation *de novo*. See Matter of Bruner, 55 F.3d 195, 197 (5th Cir. 1995).

Shreve Town's arguments are almost identical to those presented to the Louisiana Second Circuit Court of Appeal in City of Shreveport v. Chanse Gas Corp., 795 So. 2d 962, 971 (La. Ct. App. 2001). In Chanse Gas, the court held that the City's home rule charter expressly assumes the power of expropriation and that section 19:102 confers a substantive power of expropriation on the City. The court also held that it was not persuaded by the legislative acts cited by the defendants that special legislative authority is needed for the City to expropriate land because each of the acts antedate the Constitution of 1974 and its more expansive concept of home rule charter.[3]

In this case, Shreve Town asserts that section 19:102 does not provide the City with a substantive power of expropriation. We disagree. Section 19:102 states that "where a price cannot be agreed upon with the owner, any municipal corporation of Louisiana may expropriate property whenever such a course is determined necessary for the public interest." Section 19:102, along with the City's expansive home rule charter, clearly confers on the City a broad power of expropriation. Chanse Gas, 794 So. 2d at 971 (holding that section 19:102 confers a substantive power of expropriation based on the Louisiana constitutional authority and the City's home rule charter).

With respect to art. VI, § 21, the City asserts that it should not be applied in this case because it was raised for the first time on appeal. Shreve Town counters that although it failed to cite art. VI, § 21, it is nonetheless applicable because the overarching issue of whether the City has the authority

---

[3]Chanse Gas Corp. argued that the following statutes did not confer the City with the authority to expropriate its property: La. R.S. 33:4621 (authorizes municipalities to acquire property for any of the purposes for which they are organized); La. R.S. 22:4671 (authorizes municipalities with a population over 25,000 to acquire property for a municipal auditorium or convention hall and finance it by the sale of bonds); La. R.S. 39:553 (authorizes municipalities to issue bonds for enumerated public purposes); La. R.S. 33:4625 B and H (authorizes expropriation to abate slum and blighted property under Parish Redevelopment Law); La Acts 1968, No. 179 (authorizes City of Shreveport to expropriate property to abate slum and blighted areas). Chase Gas, 974 So. 2d at 970. In this case, Shreve Town cites to these same statutes in support of an identical argument.

to expropriate its property was properly raised before the district court. Regardless of whether we apply art. VI, § 21, the City possesses a substantive power of expropriation, including the right to expropriate Shreve Town's property. See LA. REV. STAT. ANN. § 19:102 (Supp. 1977).

Shreve Town further asserts that the legislature has never delegated the City with the power to expropriate property for economic development purposes. We disagree. Like the court in Chanse Gas, we reject this argument because the legislative acts relied upon by Shreve Town all predate the amended 1974 Louisiana Constitution and the City's adoption of the home rule charter.

As a result of the foregoing, we conclude that the City has the authority to expropriate Shreve Town's land as long as it does so for a valid public purpose.

III.     Public Purpose

Shreve Town argues that the district court erred in holding that economic development is a public purpose under art. I § 4 of the Louisiana Constitution. In Chanse Gas, the court held that the public purpose requirement was satisfied because the expropriation resulted in an economic benefit to the community. 794 So. 2d at 973. Both the Chanse Gas court and the district court relied on Town of Vidalia v. Unopened Succession of Ruffin, 663 So. 2d 315 (La. Ct. App. 1995) and Board of Commissioners v. Missouri Pacific Railroad Co., 625 So. 2d 1970 (La. Ct. App. 1993). We review a district court's application of state law *de novo*. See Matthis Corp. v. Exxon, 302 F.3d 448, 453 (5th Cir. 2002).

In Vidalia, the town's board of aldermen authorized acquisition of fifty-eight acres of batture land located between the levee and the Mississippi River at Vidalia, Louisiana. The town sought to develop the site "for the public use and enjoyment for recreation and tourism purposes. . .and to promote economic growth through tourism." Vidalia, 663 So. 2d at 316. Like the City's Project, the town of Vidalia's project included various economic development and recreational features: a

hotel with a commercial retail center, a marina and boat ramp, and other outdoor attractions. The court in Vidalia defined public purpose as "any allocation to a use resulting in advantages to the public at large." Id. at 319. Citing the historical, educational, recreational and other public uses to which the site would be dedicated, the court held that the Town of Vidalia sought to expropriate the defendants' property for a permissible public purpose.

In Missouri Pacific R.R., the governing board of the New Orleans Exhibition Hall Authority ("NOEHA") filed an expropriation suit to acquire property to expand its convention center. NOEHA established, through studies examining the economic benefits of the convention center, that expanding the convention center would "fulfill its public purpose of promoting economic growth and development of the area." Missouri Pacific R.R., 625 So. 2d at 1074.

Despite Shreve Town's arguments that Vidalia does not apply, the district court reasoned that Vidalia represents an accurate depiction of Louisiana law even though it refused to adopt its broad definition of public purpose. Although the district court acknowledged that Vidalia and Missouri Pacific R.R. were not controlling, the district court noted that both cases lend jurisprudential support to the City's argument that it seeks to expropriate Shreve Town's land for a public purpose. Like the Chanse Gas court, we are not persuaded otherwise.

We are likewise not persuaded that New Orleans Land v. Board of Levee Commissioners of Orleans Levee District, 132 So. 121 (La. 1930) and State ex rel. Porterie v. Housing Authority of New Orleans, 182 So. 725 (La. 1938) stand for the proposition that economic development projects cannot be equated with a public purpose or public benefits. As the Chanse Gas court noted, although those cases contain restrictive language, they do not negate the rationale of Vidalia and Missouri

9

Pacific R.R. In light of the foregoing discussion, we hold that the City has established that it seeks to expropriate Shreve Town's land for a public purpose.

IV.     Motion in Limine Ruling

Shreve Town contends that the district court, in its motion in limine ruling, erred in excluding information relating to the development and financing of the hotel. Although we normally review a district court's evidentiary ruling under an abuse of discretion standard, Shreve Town argues that the ruling should be reviewed *de novo* because the ruling amounted to a partial summary judgment ruling in favor of the City.

Shreve Town argues that the excluded evidence would have shown a violation of art. VII, § 14(A) of the Louisiana Constitution, which prohibits the City from subsidizing the development of the convention center hotel. Shreve Town further argues that the public purpose requirement can not be satisfied if the City plans to use its property in a manner prohibited by art. VII, § 14(A). In Chanse Gas, the court rejected an identical argument reasoning that "once the public purpose has been established, the fact that private entity may develop and profit from the project does not negate its public nature" and "the fact that a private developer may build or operate the hotel does not violate art. [VII], § 14[(A)]." 794 So. 2d at 975-76. Regardless of what standard of review applies, we hold that the district court did not err in excluding the evidence because the City's plans with respect to the hotel are not in violation of art. VII, § 14(A).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court allowing the City to expropriate Shreve Town's property. AFFIRMED.