Dear Mr. Carmody:
On behalf of the City of Shreveport you have requested an opinion of the Attorney General of whether the Constitution and laws of the State of Louisiana, and the constitution, laws and regulations of the federal government allow capital outlay funds to be used for the construction of a convention center hotel by the City of Shreveport or the Shreveport Convention Center Hotel Authority and, if so, whether the Louisiana State Legislature authorized the use of $12,000,000 in capital outlay funds for the construction of the convention center hotel.
Your request indicates that the construction of the hotel is to be paid for by a combination of $40,000,000 in bonds issued by the Hotel Authority and $12,000,000 in state-appropriated capital outlay funds. Should the bonds and capital outlay funds be insufficient to cover the total costs of the hotel construction then the City of Shreveport ("City") will pay any balance. The Authority was duly created and established pursuant to the Louisiana Public Trust Act (R.S. 2341-2347).
This office can find no state statutory or constitutional provisions which would prohibit the Legislature from appropriating and the Executive Branch from authorizing and administering state capital outlay funds to be used for the partial construction of the convention center hotel by the City of Shreveport and the Shreveport Convention Center Hotel Authority.
The issue of whether the construction of a hotel by the City of Shreveport serves a public purpose and is legally permissible was addressed by the Second Circuit Court of Appeals in City ofShreveport v. Chanse Gas Corporation, et al., 794 So.2d 962
(La.App. 2 Cir. 8/22/01). The case arose in connection with an expropriation suit filed by the City of Shreveport. The defendants alleged, in part, that use of the property by the city for a hotel was not for a valid public purpose as required by Article 1, Section 4 of the Constitution and that the use of the hotel by the city or by a developer/operator constituted a prohibited donation pursuant to Article VII Section 14 of the Constitution. The Second Circuit, in citing Town of Vadalia v.Unopened Succession of Ruffin, 663 So.2d 315, (La.App. 3 Cir 10/4/95) found that "economic development, in the form of a convention center and headquarters hotel, satisfies the public purposes and public necessity requirements of Art. 1, Section 4 and R.S. 19:102."
In Town of Vidalia, supra, the board of aldermen sought to acquire property on a batture of the Mississippi River "for recreation and tourism purposes * * * and to promote economic growth through tourism." The project included a hotel with a commercial retail center, a marina and boat ramp, and other outdoor attractions. The owners of part of the land objected on grounds that the project lacked a public purpose, urging "there must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable to some portion of the public." The court disagreed, finding that the jurisprudence has not defined public purpose so narrowly:
 Rather, any allocation to a use resulting in advantages to the public at large will suffice to constitute a public purpose. Moreover, a use of the property by a private individual or corporation, when such use is merely incidental to the public use of the property by the state or its political subdivisions, does not destroy an otherwise valid public purpose. 663 So.2d at 319 (emphasis in original).
The court found that the project would "stimulate economic growth in Concordia Parish, an area which has struggled with a poor economy and high unemployment. It is uncontradicted that the Project will contribute to the general welfare and prosperity of the community of Vidalia." In short, the Third Circuit affirmed that a project including a hotel and retail center would promote economic development, thus meeting the requirement of a public purpose and supporting expropriation. In City of Shreveport,supra, the City sought to expropriate three tracts of land for the purpose of building a new convention center and a headquarters hotel. The condemnees challenged the taking on the grounds that economic development was not a proper purpose. The Court, relyingon Town of Vidalia, supra, ruled that the City had established a public purpose for the expropriation.
In dismissing the defendants claim that the possible involvement of a developer/operator in the use of the hotel constituted a prohibited donation the court held: "As noted earlier, once the public purpose has been established, the fact that a private entity may develop and profit from the project does not negate its public nature. Town of Vidalia v Unopened Succession of Ruffin, supra; State ex rel. Porterie v. Housing Authority, Supra; HawaiiHousing Authority v. Madkiff, supra. Similarly, the fact that a private developer may build or operate the hotel does not violate Art. 7, Section 14."
There are other examples of Louisiana Courts finding of a "public purpose" in the acquisition and use of property using public funds. In Calcasieu-Cameron Hospital Service Dist. v. Fontenot,628 So.2d 75 (La.App. 1 Cir. 1993), the court held that an expropriation by a hospital district for purposes of providing parking space needed by a state-operated hospital was a public purpose. In Lake Charles Harbor Terminal Dist. v. Farquhar,196 So.2d 847 (La.App. 3 1967), the court held that the expropriation of a parcel of land for purposes of constructing bulk storage facilities and access roads to these facilities was for a public purpose, even though the storage facilities were to be leased to private companies and a road being constructed on a portion of the land was to be used primarily to allow access for one particular user.
In Miller v. Police Jury of Washington Parish, 74 So.2d 394 (La. 1954), the issue was whether the use of bonds to finance the purchase and construction of a milk processing plant to be leased to a private entity was for a public purpose. The court held that since the processing plant was found to be economically necessary to the citizens of the parish, the processing plant had a public purpose, even though the property was to be leased to a private company which was to be the sole user of the facilities and the sole recipient of all profits derived from its activities conducted on the property. In Board of Directors of theIndustrial Development Board of the City of New Orleans v. AllTaxpayers, 848 So.2d 740 (La.App. 4 Cir. 2003), the court held that a lease of land for purposes of constructing a retail shopping center and affordable housing with bonds secured by the revenues generated under the lease agreement was for a public purpose. The development would create jobs and affordable housing. The fact that the leased property would be exempt from the payment of ad valorem taxes dids not constitute an improper donation of public funds.
Our office has issued prior opinions that opined that a valid public purpose existed and capital outlay funds could be used for the construction of a family-oriented Theme Park (AG Op. No. 98-252) that would increase tourism and spur economic development and for rebuilding an old high school (AG Op. No. 98-378) that had cultural and historical significance. In both opinions our office concluded that neither project violated Article VII, Section 14 of the Louisiana Constitution.
Based on the foregoing the construction of a convention center hotel owned by the City of Shreveport and the Shreveport Convention Center Hotel Authority would appear to serve a valid public purpose of increasing tourism and furthering economic development and therefore there does not appear to be any legal impediment to the use of state capital outlay funds for such a project.
Neither has our office found any provision in the capital outlay act or any documents relating thereto that would indicate the Legislature did not intend to appropriate capital outlay funds for the construction of the convention center hotel.
Article VII, Section 11(C) of the Louisiana Constitution provides that the governor shall submit to the legislature, at each regular session, a proposed five-year capital outlay program. Prior to the inclusion each capital outlay project shall be evaluated through a feasibility study, as defined by the legislature, and which shall include an analysis of need and estimates of construction and operating costs.
LSA-R.S. 39:101 relates to the Capital outlay budget request and requires the head of each budget unit to present to the Division of Administration through facility planning and control a request for all expenditures for capital outlay projects falling within the definition of R.S. 39:2(9). The request shall contain and constitute the feasibility study required pursuant to Article VII, Section 11(C) of the Constitution of Louisiana and shall include projects to be funded with the next five years
LSA-R.S. 39:2(9) defines "Capital outlays" as the expenditures for acquiring lands, buildings, equipment, or other permanent properties, or for their preservation or development or permanent improvement.
The City of Shreveport submitted the required feasibility study to the Office of Facility Planning and Control via the Capital Outlay Request form. On page 5 of the Request under the section entitled "Demonstration of Need" the description of the project states: "Addition of 600 parking spaces to proposed parking garage and construction of landscaped plaza to connect new Convention Center to downtown core. Includes 12 million for partial financing of Convention Hotel 300 rooms." The request submitted by the City of Shreveport complied with the constitutional and statutory requirements and included a statement that the requested funds would, in part, be used for the construction of the Convention Hotel.
Act No. 23 of the 2002 Regular Session of the Louisiana Legislature constituted the Capital Outlay Act and provided with respect to the State's capital outlay budget and program for the fiscal year 2002-2003. It contained an appropriation to the City of Shreveport for the "Convention Center Complex and Other Ancillary Facilities, Including Uses". Non-cash lines of credit totaling $12,000,000 were granted for the Project by the State Bond Commission. These lines of credit were reauthorized pursuant to the Capital Outlay Act for 2003-2004 and 2004-2005 in the appropriation to the City of Shreveport for the "Convention Center Complex, Planning and Construction". In addition to the $12 million dollars of state-appropriated funds, public trust funds totaling $40,000,000 will be expended solely for the construction of a hotel facility which will be adjacent to the Convention Center.
Act 2, the current capital outlay act, provides in Section 8 thereof that "All funds appropriated therein under the name of non- state entities, shall be considered as having been appropriated directly to the Facility Planning and Control section of the Division of Administration, and shall be administered under cooperative endeavor agreements." Previous capital outlay acts have also contained similar language.
Pursuant to Act 23 of the 2002 Regular Session a Cooperative Endeavor Agreement was executed by the State of Louisiana on January 6, 2003, and by the City of Shreveport and the Shreveport Convention Center Hotel Authority on December 23, 2002. The cooperative endeavor agreement is identified as "The City of Shreveport and Shreveport Convention Center Hotel Authority: Convention Center Complex and Other Ancillary Facilities, Including Uses, ($85,000,000 Local Funds) Facility Planning 
Control Project No. 50-MR1- 01B-04, (Caddo).
In Attorney General Opinion No. 04-0197 our office opined that the Public Bid Law was applicable to the construction of the hotel project and in so stating found that the Cooperative Endeavor Agreement related solely to the construction of the hotel facility. Exhibit A attached to the Cooperative Endeavor Agreement clearly reflects that the $12,000,000 of state-appropriated capital outlay funds is to be used in the construction of the hotel facility. There is no indication during any subsequent reauthorization of the appropriation that the Legislature intended to withdraw or change the appropriation from its original use.
It is therefore the opinion of this office that, subject to the authorization and approval of the Division of Administration, there does not appear to be any legal impediment to the use of capital outlay funds for the partial construction of the Shreveport Convention Center Hotel.
We trust that this answers your inquiry.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: _______________________________
 RICHARD L. McGIMSEY Assistant Attorney General
CCF, jr./RLM/dam